LAWRENCE and others, Trustees of the Pacific Insurance Company, *vs.* BAYARD and others.

Where an act of the legislature directed the proceeds of certain bank stock to be paid to the eldest son of B. who should be living at the death of L., and at the passage of that act, in 1831, B. had two sons living, both of whom survived L., and the eldest of the two sons after the passage of the act and before the death of L. sold and assigned his interest in the proceeds of the stock to H., a bona fide purchaser; *Held*, that the eldest son of B. at the time of the sale had a vested interest in the proceeds of the stock in the nature of a vested remainder, subject to be divested by his death during the life of L., and that his whole interest in the fund passed by the sale to H.

By the provisions of the revised statutes, a mere possibility coupled with an interest is capable of being conveyed or assigned at law, as well as in equity, in the same manner as an estate or interest in possession.

January 22.

THIS was an appeal by Willis Hall, one of the defendants, from a decision of the vice chancellor of the first cir-

cuit, refusing to dissolve or modify the injunction in this cause, so far as it affected the appellant's rights. The subject of controversy, so far as Hall was concerned, was the one-fourth of the proceeds of 600 shares of the stock of the Bank of the United States, mentioned in the will of John G. Leake; which fourth was, by the act to incorporate the Leake and Watts' Orphan House, passed in March, 1831, directed to be paid, upon the death of·Margaret Leake, to the then surviving oldest son of William Bayard the elder. (*See Laws of* 1831, *p.* 62, § 4.) At the time of the passage of that act, William Bayard had two sons, William and Robert, both of whom survived Margaret Leake and were defendants in this suit; of which sons William was the eldest. In February, 1829, the Pacific Insurance Company recovered against William Bayard the younger and Robert Bayard a judgment for a large amount; upon which an execution was issued, returnable on the *twenty-ninth* of the same month, and was returned unsatisfied. The insurance company was afterwards dissolved by an order of the chancellor, and the complainants were appointed trustees of its property and effects. In June, 1836, Margaret Leake having died a short time before, the complainants filed their bill in this cause as judgment creditors of William and Robert Bayard, to reach, among other things, the interest of William Bayard in the one-fourth of the proceeds of the United States Bank stock; to which bill Hall, the appellant, the executors of Leake, and the New-York Life Insurance and Trust Company, were made defendants, with William and Robert Bayard. Upon the filing of the bill, an injunction was issued restraining the defendants William and Robert Bayard from intermeddling with or transferring any of their property or effects, &c.; and the executors of Leake were also restrained from paying over any part of the legacy, or proceeds of the bank stock, to William Bayard *or to any other person.* The bill was taken as confessed against William Bayard. The other defendants put in their answers, to which replications were filed. From the answer of Willis Hall, it appeared that on the 30th of June, 1832, he made a bona fide purchase of William Bayard's

contingent interest in the proceeds of the bank stock, to which the latter would be entitled as the eldest son if he should survive Margaret Leake, and took a regular assignment thereof under seal; that as a consideration for such interest he agreed to give $12,000, payable in twelve annual payments, for which, at the time of such purchase, he gave twelve separate notes of $1000 each, payable to the order of William Bayard; and that such notes had been regularly paid by Hall as they became due. Hall further stated in his answer that he purchased of Robert Bayard his contingent interest in the legacy, to which he would be entitled as survivor if his elder brother died before Margaret Leake; and that he paid him $450 for such interest and took an assignment thereof.

*D. Graham, jun.* for the appellant. The interest of William Bayard was assignable. Admitting it to be a mere possibility, the revised statutes expressly make it alienable. The provision in regard to real estate, by which expectant estates are descendible, devisable and alienable in the same manner as estates in possession, (1 *R. S.* 725, § 35,) is adopted in regard to personal property. (1 *R. S.* 773, § 2.) If this be so, then there is an end to the question, for the estate had passed before the lien of the complainants was acquired, which was by the filing of the bill. (*Beck* v. *Burdett*, 1 *Paige*, 305, 309.) But if the estate of William Bayard was not alienable under these provisions, then it was at common law assignable in equity. (1 *Preston on Est.* 89.) And upon the principle that equity will regard as done what it would compel to be done, it will be considered as assigned immediately on the vesting of the estate; and in such case, there being no lien upon it, the assignment was free from incumbrance and absolutely vested the property. But even if the complainants had acquired a lien, the equity of Hall being prior to theirs would be protected, at least in a court of equity. The rule of this court on the subject is, that judgment creditors have no preference over prior equitable claims against the estate of the debtor. *(In the matter of Howe.* 1 *Paige.* 125. *Keirsted* v. *Avery.* 4 *Idem.*

9, 15.) Upon the same principle, therefore, and upon much stronger reason, where the lien of a party is merely equitable, will it be postponed to a prior equitable lien upon or conveyance of the premises upon which it is sought to make it operate.

*R. Sedgwick*, for the respondents. The purchase of Hall was a clear fraud upon the complainants and all the other creditors of William Bayard. The judgment of the complainants for $10,594 09 was recovered in 1829. On the 30th June, 1832, Hall took an assignment for the nominal consideration of $12,000 of all the interest of William Bayard in 600 shares of stock of the Bank of the United States, it being worth $20,000. And the $12,000 consisted of twelve notes of $1000 each, payable in twelve successive years to William Bayard or order. This arrangement was intended on the part of Bayard to hinder and delay creditors, by taking for an interest, which was soon to come to his possession or to that of his assignee of the value of $20,000, the promissory notes of Hall without security, made payable at such distant periods that they would be worth very little to W. Bayard's creditors. The assignment to Hall conveyed nothing but an *interest under the will.* A reference to the act of the legislature in relation to the will will show that no property could pass thereby. W. Bayard's interest, such as it was, existed *under the act.* His interest was an interest limited to the survivor of his father's two sons, and was therefore a naked possibility, and could not pass by assignment. (*See Pelletreau* v. *Jackson,* 11 *Wend.* 120; 13 *id.* 178, *J. Tracy's opinion.*) The revised statutes, 1 *R. S.* 725, § 35, & 773, § 2, do not alter the case. The first section cited refers to real estate; the second to the *duration,* not the quantity or transferribility of the estate. There was no covenant of any sort in the assignment by W. Bayard. This was necessary to transfer a future contingent interest. (1 *Vesey,* 413. 4 *Wendell,* 619.)

THE CHANCELLOR.   It does not appear upon what ground the vice chancellor denied the appellant's application ; but 1 presume it must have been upon the ground that the defendant Hall had not distinctly and explicitly denied the charge of fraud as contained in the bill.   It appears to me, however, that the complainants did not intend to swear to the charge of fraud in so direct and positive a manner as to entitle them to a preliminary injunction, interfering with the rights of Hall, on that ground ; although it may be a sufficient averment in pleading to put the fact in issue, so as to authorize them to introduce proof on the subject, if the fraud should not be admitted by the defendants.   There is no fact charged in the bill, or admitted in the answer, from which it is possible for me to form any opinion whether the $12,000 was either more or less than the value of Wm. Bayard's contingent interest in the reversion of this stock.   That value must depend upon the probability which existed in 1832 of a renewal of the charter of the Bank of the United States ; without which it could not well be presumed that W. Bayard's interest in the stock, even if he survived Mrs. Leake, would be any thing more than the par value thereof. And to form any opinion of the value of this contingent remainder, depending on the chances of survivorship, it is necessary to know what were the ages and the state of health of the several parties ; so as to be able to calculate not only the chances of survivorship but also what then was the probable period of the continuance of the life estate of Mrs. Leake.   A knowledge of the actual death of Mrs. Leake in 1836, and of the value of the stock at that time, when such value had been greatly increased by the result of a popular election in Pennsylvania, do not aid us in the least in determining the value of W. Bayard's contingent interest four years previous.   The amount paid for Robert Bayard's contingent interest, and whether the payment was in money or otherwise, are matters of no consequence here, except so far as the amount paid by Hall shows what he supposed Robert's chance of being the survivor at the death of Mrs. Leake really was. Upon the face of this bill, therefore, I cannot see that the right of Hall to the one-fourth of the 600 shares of bank

stock was so impeached as to entitle the complainants to an injunction to prevent the executors of Leake from paying over the same to him or to his mortgagees. The bill, so far as his rights under the assignment are concerned, appears to be a mere fishing bill. And upon the coming in of his answer, showing that he had fairly purchased W. Bayard's interest in the stock long before the complainants had obtained any legal or equitable lien thereon, I think the injunction should have been dissolved.

There is no foundation for the objection that the interest of W. Bayard was of such a nature that it could not pass by sale or assignment before the death of Mrs. Leake. It was not a mere naked possibility, or even a mere possibility coupled with an interest; but it was a vested remainder in one-fourth of the 600 shares of the bank stock, according to the statutory definition of vested remainders. For W. Bayard was the person in being and ascertained who would, at the time of the assignment in 1832, have had an immediate right to the possession of such bank stock if the life estate of Mrs. Leake therein had then ceased. (*See* 1 *R. S.* 723, § 13.) He was the oldest son; to whom this remainder in fee was limited, subject only to be divested by his death during the continuance of the particular estate or interest of Mrs. Leake and in the lifetime of his brother Robert. The limitation of the remainder in fee to W. Bayard was therefore vested in interest. But I admit the substituted remainder to Robert necessarily remained contingent so long as his elder brother was living. Nothing could defeat W. Bayard's right to the bank stock or its proceeds as an interest in possession, if he continued to live until the life interest of Mrs. Leake terminated. And it is the present capacity of the individual to take the remainder in possession, if the particular estate should immediately determine, which vests his remainder in interest; and not the absolute certainty that such remainder will ever in fact become vested in possession in him. (*Per Nelson, C. J.* 16 *Wend. Rep.* 137. *Watk. Law of Conv.* 123, *8th Lond. ed.* 5 *Paige's Rep.* 466.) And nobody ever doubted that a

remainder which was vested in interest could be transferred, both at law and in equity.

Again; the revised statutes, which were in operation when this sale was made, have declared in express terms, that expectant estates are descendible, devisable and alienable, in the same manner as estates in possession. (1 *R. S.* 725, § 35.) And by an examination of the several provisions of the revised statutes it will be seen that by the term " expectant estates" the legislature intended to include every present right or interest, either vested or contingent, which may by possibility vest in possession at a future day. The mooted question, whether a mere possibility coupled with an interest is capable of being conveyed or assigned at law, is therefore forever put at rest in this state.

Besides; there never was a doubt that any interest whatever in personal property, or a mere possibility coupled with an interest in real estate, was assignable in equity. (*Whitfield* v. *Fausset,* 1 *Ves. sen.* 391. *Wright* v. *Wright, Idem,* 411.) And if the contingent interest in this stock passed even in equity to Hall, under the assignment of 1832, his prior equity must prevail; as the complainants could not acquire any equitable lien upon property of this description until the filing of their bill here, in 1836. (*Beck* v. *Burdett,* 1 *Paige's Rep.* 305. *Edgell* v. *Haywood,* 3 *Atk.* 357.)

The question whether the complainants can reach the amount due upon the several notes which remained unpaid at the time of the commencement of this suit, is not now before the court on this appeal. If they belonged to W. Bayard at that time, Hall certainly could not safely pay them to him after he had notice of the equitable lien which the complainants had acquired by the filing of their bill. But as the notes were negotiable, if they had been transferred to a bona fide holder before that time, or if he is obliged to pay them to a bona fide holder to whom they have been since assigned by Bayard in violation of the injunction, Hall cannot be compelled to pay them the second time. Even if the notes are still under the control of W. Bayard, or in the hands of a receiver appointed in this cause, that cannot affect Hall's right to the bank stock, before the notes have

become payable, and when there is no pretence in the bill that he is irresponsible.

The order of the vice chancellor must therefore be reversed with costs; and the injunction must be so modified as to permit the executors of Leake to transfer the bank stock, or the proceeds thereof, to the appellant, or to his assignees or mortgagees.