Parker, J.
The grant from Dederer to the Hudson and Delaware Railroad Company, bearing date the first day of July, 1836, was made to that company “ and their successors.” Under that grant, there can be no doubt the Hudson and Delaware Railroad Company took a fee. The words of perpetuity used would have been sufficient to describe a fee, even under the most strict requirements of the common law.
The company had ample power to purchase lands. It was a power incident at common law to all corporations, unless they were specially restrained by their charters or by statute. (2 Kent, 281; Co. Litt., 44 a, 300 b; 1 Kyd on Corp., 76, 78, 108, 115; 3 Pick., 239.) And in this case the power was expressly conferred by the 9th section of the charter (Sess. Laws of 1835, p. 113); and by the 16th section there were given to it the general powers conferred upon corporations (1 R. S., 731), one of which is that of holding, purchasing and conveying such real estate as the puiposea *128 of the corporation may require. But if no words of perpetuity had. been used, the grantor owning a fee, the company would have taken a fee; for the statute is. now imperative, that every grant shall pass all the estate or interest of the grantor, unless the intent to pass a less estate or interest shall appear by express terms or be necessarily implied in the terms of the grant. (1 R. S., 748, § 1.)
But it is.objected that because, by the act of incorporation, there was given to it only a term of existence of fifty years (Laws of 1835, p. 110, § 1), therefore the grant shall be deemed to have conveyed an estate for years, and not in fee. The unsoundness of that position is easily shown. It was never yet held, that a grant of a fee in express terms could be restricted by the fact that the grantee had but a limited term of existence. If it were so, a grant could never be made to an individual in fee, because, m his earthly existence, he is not immortal. Under such a rule, a man could never buy a greater interest in a farm than a life estate. It would follow that all estates would be life estates, except those held by perpetual corporations. The intent of parties, fully expressed in a deed, would avail nothing, but all grants would be measured by the mortality of the grantee. It is needless to follow out the proposition further to show its absurdity.
It is not to the parties to a grant, but to its terms, that we look to ascertain the character and extent of the estate conveyed. Such was the rule at common law, and is still , by statute. (1 R. S., 748, § 1.) The change made by the statute favors the grantee, where there are no express terms in the grant, by presuming the grantor intended to convey all his estate.
At common law, it was only where there were no express terms, defining the estate in the conveyance, that the term of legal existence of the grantee was deemed to be the measure of the interest intended to be conveyed. Thus, words of perpetuity, such as “ heirs or successors,” were *129 necessary to convey a fee. A grant to an individual, without such words, conveyed only a life estate. For the same reason a grant, without such words, to a corporation aggregate (Viners Ab., Estate, L. 3), or to a mayor or commonalty (ib., 3), conveyed, a fee, because the grantees were perpetual. The grantee named in such case having a perpetual existence, the estate could not have been enlarged by words of succession.
But this is now changed by our Revised Statutes. Words of inheritance or succession are no longer necessary, and. in their absence, we look, not to the term of existence of the grantee to ascertain the estate, but to the amount of interest owned by the grantor at the time he conveyed. All his estate is deemed to have passed by the grant. (1 R. S., 748, § 1.)
All this is applicable only to cases where the grant is silent as to the extent of interest conveyed. Where that interest is expressly described, as in this case, the law never, either before or since our revision, did violence to the intent of the parties, by cutting down the estate agreed to be conveyed to the measure of the grantee’s term of existence. It has long been one of the maxims of the law, that “ no implication shall be allowed against an express estate limited by express words.” (Viner’s Ab., Implication, A. 5; 1 Salk., 236.)
It is erroneous to say that an estate in fee cannot be fully enjoyed by a natural person, or by a corporation of limited duration. It is an enjoyment of the fee to possess it, and to have the full control of it, including the power of alienation, by which its full value may at once be realized.
It is well settled that corporations, though limited in their duration, may purchase and hold a fee, and they may sell such real estate whenever they shall find it no longer necessary or convenient. (5 Denio, 389; 2 Preston on Estates, 50.) Kent says : “ Corporations have a fee simple for- the purpose of alienation, but they have only a determinable *130 , fee, for the purpose of enjoyment. On the dissolution of ; the corporation, the reverter is to the original grantor or his heirs ; but the grantor will be excluded by the alienation in fee, and in that way the corporation may defeat the possibility of a reverter. (2 Kent, 282; 5 Denio, 389; 1 Comst. R., 509.) Large sums of money are accordingly expended by railroad companies in erecting extensive station houses f and depots, and by banking corporations in erecting banking" houses, because, holding the land in fee, they may be able to reimburse themselves for the outlay by selling the fee before the termination of their corporate "'existence.
The Hudson and Delaware Railroad Company then, by their grant from Dederer, took a title in fee, but it was a fee upon condition, there being in the grant an express condition that the road should be constructed by the company within the time prescribed by the act of incorporation. This was not a condition precedent, as was argued by the plaintiff’s counsel, but a condition subsequent. The fee vested at once, subject to being divested on a failure to perform the condition. This is apparent from the language employed in the grant and from the character of the transaction. There are no technical words by which tp distinguish between conditions precedent and subsequent. Whether a condition be one or the other is matter of, construction, and depends upon the intention of the party creating the estate. (4 Kent, 124; 1 Term R., 645; 2 Bos. & Pull., 295; 3 Peters’ U. S. R., 346.) In the latter case, Marshall, Ch. J., said: “ If the act (on which the estate depends) does not necessarily precede the vesting of the estate, but may accompany or follow it, if this is to be collected from the whole instrument, the condition is subsequent.” In this case, it was evidently the design of the parties that the estate should vest at once, so that the grantee might proceed immediately with the construction of the road; otherwise a condition that it should be completed within a given time, or ever completed, would bo *131 impossible. From the character of the condition, it could not be a condition precedent. Possession and control of the land must necessarily accompany the construction and precede the completion of the road. The grant is not made to take effect on the happening of a certain event, but in presentí, and liable to be divested by the grantee’s failure to perform the condition. (See also 5 Ham. Ohio Rep., 389; 9 East R., 170; 5 Pick. R., 528; 18 Martin's Louis. R., 221; Co. Litt., 246, b.) Kent says (4 Kent., 129): “ Conditions subsequent are not favored in the law and are construed strictly, because they tend to destroy estates.” They can only be reserved for the benefit of the grantor and his heirs, and no others can take advantage of a breach of them. (4 Kent Com., 122, 127; 2 Black. Com., 154.) The plaintiff took his deed of the farm on the first of April, 1844. This was one year before the expiration of the time for constructing the road, and two years before the Hudson and Delaware Railroad Company conveyed to the defendants. At that time, therefore, there had been no- breach of the condition ; on the contrary, the right of the company was expressly recognized and reserved in the deed. Certainly, then, Dederer, when he conveyed, had no assignable interest.
A mere failure to perform a condition subsequent does not divest the estate. The grantor or his heirs may not choose to take advantage of the breach, and until they do so, by entry, or by what is now made'by statute its equivalent, there is no forfeiture of the estate. This was the common law, and it has not been altered by statute so as to give a right of entry to an assignee in any instance not coupled with a reversionary interest, as in the cases of estates for years and for life, except in cases of leases, or rather of grants in fee, reserving rent. To that extent the law was changed in England by 32 Henry VIII, ch. 34; and similar enactments have been made in several of the states. In this state, these provisions will be found at 1 R. S., 748, §§ 23, 24 and 25, and are limited to grants or leases in fee *132 reserving rents, and to leases for lives and for years. As to other grants upon condition, the common law is unchanged. (2 Kent, 123.)
There was a reason for the statutory change in the particular cases mentioned; for in them the grantor had an interest independent of the possibility of reverter. In the cases of a grant or lease in fee, though the grantor has no reversion, he 'has an interest by way of annual rents reserved, and in the cases of leases for lives and years, he has an actual reversion of what remains after the expiration of the particular estates. In these cases, therefore, he has a vested interest, and may well be permitted to assign with it, and his assignee to- take with such interest, his right of entry for non-performance of a condition subsequent; for - the right to enforce a forfeiture is necessary to the collection of the rents and to the protection and enjoyment of the reversion. But where a fee simple, without a reservation of rents, is granted upon a condition subsequent, as in this case, there is no estate remaining in the grantor. There is simply a possibility of reverter, but that is no estate. There is not even a possibility coupled with an interest, but a bare possibility alone. It has been said such possibilities were assignable in equity; but those were interests of a very different character, as I will presently show. So far from including these, Kent says (4 Kent's Com., 130): “A court of equity will never lend its aid to divest an estate for the breach of a condition subsequent,” and the chancellor acted upon that rule in Livingston v. Stickles (8 Paige, 398).
All contingent and executory interests were assignable in equity, and would be enforced if made for a valuable consideration. (4 Kent, 269.) But these words had an ascertained legal signification; and it was never claimed that they were applicable to a case like that under consideration. It will hardly b e pretended that Dederer’s possibility of reverter was a contingent or an executory interest, in the legal sense of these words.
*133 By the Revised Statutes (1 R. S., 725, § 35), expectant estates are descendable, devisable and alienable, in the same manner as estates in possession; and it is claimed that Dederer had an expectant estate. But we are relieved from all doubt on this point, by the fact that the statute itself has furnished the definition of the term “expectant estates.” They are described (1 R. S., 723, § 9) as including future estates and reversions ; and these expressions are also defined in §§ 10 and 12. A future estate is one limited to commence in possession at a future day, either without the intervention of a precedent estate, or on the determination, by lapse of time or otherwise, of a precedent estate created at the same time. And by § 13, a future estate is said to be vested, where there are persons in being who would have an immediate right to the possession of the lands, upon the ceasing of the intermediate or precedent estate ; and “ contingent,” whilst the person to whom, or the event upon which they are limited to take effect, remains uncertain. A reversion is defined as the residue of an estate left in the grantor or his heirs, or in the heirs of a testator, commencing in possession on the determination of the particular estate granted oi devised. I have been thus particular in transcribing these statutory definitions of “ expectant estates," to show, what is apparent, that they are not in the least applicable to the case under consideration. Though, as Chancellor Walworth said (in 7 Paige, 76): “ They include every present right and interest, either vested or contingent, which may by possibility vest at a future day,” yet they do not include the mere possibility of a reverter, which the grantor has after he has conveyed in fee on condition subsequent. He has no present right or interest whatever, and no more control over it than a son has in the estate of his father who is living. The provision of the Revised Statutes, by which expectant estates are made alienable, no doubt covers the same class of interests which, before, were only assignable *134 in equity. They are now assignable at law as well as in equity.
Kent says (4 Com., 370), that the grantor of an estate upon condition has only a possibility of reverter and no reversion ; and in the note to page 11 of the same volume he says, “ there is only the possibility of reverter left in the grantor and not an actual estate,” citing Martin v. Strachan, 5 Term. R. 107, (note). For examples illustrating the distinction between a naked possibility and a possibility coupled with an interest, see 4 Kent Com., 262, note b, and Jackson v. Waldron (13 Wendell, 178), and Fortescue v. Satterthwrite, 1 Iredell N. C. R., 570.
Suppose A sell to a banking corporation in fee, by express words, a lot of land on which to build a banking house. If the bank does not sell that land, but retains it till the expiration of its charter, it will revert to him, or, if he be dead, to his heirs. How, what estate had'A after he had conveyed in fee to the bank ? Hone whatever. He had only a possibility of a reverter—a naked and very remote possibility, but nothing that he could convey to an. assignee. He had sold his entire interest and received the full value of" it. The presumption was it would never return. The law would not favor its return; and the grantee, who enjoyed the entire estate and upon whose volition alone it could return,' would not be likely to so far neglect his own interests as to permit its return. A voluntary reconveyance would be hardly more improbable than a reverter. Just such an estate and no.other had Dederer in this land when he conveyed to the plaintiff. In both cases, the estates granted were upon condition. In the case of the bank, the condition was implied in law. (Angell & Ames on Corp., 128.) In this case, the condition was expressed.
What is meant by possibilities coupled with an interest is of a very different character, as may be seen by reierence to 4 Kent Com., 262, and cases theire cited, and 13 Wend., supra. Jicklings in his treatise on the analogy between *135 legal and equitable estates, says, that under the generic term of possibilities coupled with an interest may be classed all contingent and executory interests in land, as springing and shifting uses, contingent remainders and executory devises.
The cases cited by the plaintiff’s counsel, for the purpose of showing that the common law rule has been changed by the Revised Statutes, have no applicability. In Lawrence v. Bayard (7 Paige, 70), the litigation was concerning personal property only, and the general remarks of the chancellor, as to the extent of the change made by the Revised Statutes, I have already quoted.
Upon the whole, my conclusion in this case is, that the Hudson and Delaware Railroad Company took from Dederer a fee upon condition subsequent; that at the time of the conveyanóe by Dederer to the plaintiff, there had been no forfeiture; and that Dederer had, at the time of such conveyance, no assignable interest in the premises.
The judgment of the supreme coúrt should be affirmed.
Gardiner, C. J.
By the conveyance from Dederer, in 1836, the Hudson and Delaware Railroad Company took a fee in the premises in question. Such is the legal effect of the language of the deed, and there is nothing in the objects for which the company was incorporated to restrict its meaning. As the learned judge, who delivered the opinion of the supreme court, has well remarked, there is no necessary connection between the period of enjoyment or user and the quantity of the estate. A fee may be as necessary to the absolute control of their track, and for the erection of bridges and other permanent fixtures, where the corporation is to continue for fifty years, as where its charter is perpetual. The fee was qualified in this case' by a condition subsequent; the grant was upon the express condition that the railroad should be constructed by the corporation within the time prescribed in the act of incorporation, *136 The construction of the road implied a right to enter and appropriate the land granted for that purpose ; because, in no other way could the condition be performed. The permission to survey and lay out the track amounted to nothing, without the right to construct, which implied not merely a right to enter, but to use the necessary materials there found; to lay down the rails; in a word, the right to the exclusive and permanent possession and ownership of the soil.
The next question is, has there been a breach of the condition; and if so, can the grantees of Dcderer claim the benefit of it ? The condition is, that the “ said road should be constructed by the Hudson and Delaware Company within the times prescribed in the act of incorporation.’ ’ It is claimed that this act is private, and one of which we cannot take judicial notice; and from aught that appears on the face of the special verdict, the time limited for the construction may not yet have elapsed. The objection is technical, and is answered: first, by the grant from Dederer, which refers to and admits an act of incorporation. Under this grant the defendants, the Erie Railroad, claim title exclusively; secondly, the jury expressly find that the conveyance, by the Delaware and . Hudson Company to the defendants, was under and in pursuance of an act authorizing the New-York and Erie Railroad Company to construct a branch, terminating at the village of Newburgh and authorizing, among other things, a conveyance of althe rights, privileges, immunities and improvements of tbs Hudson and Delaware Company, whether acquired b* virtue of their original act of incorporation or under an v act amending the same. As the act stated in the specim verdict refers, by way of recital, to and adopts the origin » ¡ act incorporating the Hudson and Delaware Company, to* existence of that statute, even if a private one, is sufficient v established, and its provisions may be considered as form , g a part of the verdict, so far as they may be necessary t« a *137 determination of the rights of these parties. The act of incorporation thus referred to was passed April 21, 1835 (Laws of 1835, 110), and provides that the corporation should, within two years from the date of that act, commence, and in ten years thereafter finish and put in operation, a single or double track of such road from the village of Newburgh to the Delaware river. The verdict states thato “ the company commenced the construction of the railroad on the 27th of October, 1836, but never finished or put in operation their single or double track, or any part thereof.” If the company had ten .years from the date of their charter, or, if the work should be commenced within two years, ten years from that commencement within which to complete the road, which is the most that can be claimed, the longest period would expire in October, 1846. The suit was commenced in February, 1847. The condition in the conveyance of Dederer was therefore never performed by the Hudson and Delaware Company, and we cannot assume a performance by the New-York and Erie Railroad Company, because no such fact is found by the verdict, but the contrary. A breach, consequently, is established.
The grantor and his heirs, therefore, could enter upon the premises for the non-performance of the condition; and the remaining question is, did that right enure to the benefit of the plaintiff, who claims, under the original owner, by deed subsequent to the conveyance to the corporation and prior to the breach of the condition? The deed last mentioned was executed on the first of April, 1844, and conveyed the entire farm, of which the premises in question were a part, in fee, “ subject only to such right as the Hudson and Delaware Company then had to any portion thereof sufficient for the track of their road.”
At the time of this conveyance, Dederer had the mere right to reclaim the premises for the non-performance of the condition. That such a right was not the subject of conveyance at' the common law, is fully established by the *138 authorities referred to by the supreme court, and those quoted by Judge Ruggles in the' case of De Peyster v. Michael, 2 Selden, 506, 507. But it is urged that the court below overlooked a provision of the Revised Statutes defining estates in expectancy, and declaring them “ descendible, devisable and alienable, in the same manner as estates .in possession.” (1 R. S., 726, § 35.) A future estate is defined to be an estate limited to commence in possession at a future day, and a reversion to be the residue of an estate left in the grantor or his heirs, commencing in possession on the determination of a particular estate granted. (§§ 10, 12.) The right of Dederer was not a reversion, for he had parted with the fee. No remainder could have been limited upon a conditional fee by the common law, for the very conclusive reason that the first grantee took the whole estate, and there was nothing that was the subject of limitation. The definition contained in the 10th section was not intended to create any new estate, unknown to the law as then existing, but to apply the same principles to all classes of expectant estates. Hence, the revisers, in their note to the 10th section, say: “In conformity with our plan, and with a view to subsequent provisions, the definition in this section is so framed as to comprehend every species of expectant estates created by the act of the party, remainders, strictly so called, future uses and executory devises.” The words by “ lapse of time or otherwise,” they add, are necessary to provide for contingent limitations operating to abridge or defeat the prior estate; and the other variations from the ordinary definition of a remainder, are introduced to embrace estates in futuro, as they are technically termed. This is all very intelligible, but is very far from avowing a design to declare every contingency, by which an estate might possibly be determined, a conditional .limitation; or that a right, to arise upon a forfeiture by which an estate might be avoided, was itself an estate, either with or without a condition. *139 A right of this sort, depending upon the non-performance of a condition by the grantee, was not an estate in the lands to which the condition pertained, either at the common law or by the Revised Statutes. Accordingly, in De Peyster v. Michael, above referred to, we hold that the right of reentry, for the non-payment of rent or the non-performance of other covenants, is not such an interest in the estate as would uphold the condition in that case ; that it was not a reversion nor the possibility of a reversion, nor any estate in the land. It was a mere right in action, and if enforced, the grantor would be in by forfeiture of a condition and not by a reverter. (Id., 506.) The learned editor of Kent’s Commentaries, in a note, after referring to the definition of future estates given in the 10th section of the Revised Statutes, and to the 35th section above quoted, remarks, that “ this sweeping provision would seem to embrace every executory and contingent interest.” (4 Kent, 7th ed., 271, n. a.) If by this is meant that every executory and contingent interest, in the language of the TOth section “ limited” to commence in possession at a future day, is alienable, the remark may be correct. The word interest would merely be substituted for “estate,” the term adopted in the statute. If, however, it is to be understood as intimating that a naked possibility, not arising from a limitation in a deed or devise, as of a son inheriting the estate of his father living at the time of the grant, is alienable, the doctrine is not, I apprehend, supported by anything in the statute upon which he is commenting.
The distinction between a limitation and a condition is stated in the Commentaries of Chancellor Kent. The first determines the estate when the period of limitation arrives, without entry or claim. A condition does not, however, defeat the estate until entry by the grantor or his heirs, and upon entry, the grantor is in as of his former estate. (Kent’s Com., 131, vol. 4, 7th ed.) When men of the high standing of the revisers introduced the legal term “ limita *140 tion” into their definition of a future estate, there is every presumption that they used it in its ordinary legal sense, and in this sense it certainly does not include a condition subsequent.
Upon the whole, I am of opinion that the law is not changed by our statute so as to affect the rights of these parties; that the decision of the supreme court was correct, and that the judgment should be affirmed.
Judgment accordingly.