## Case No. 1,224.

### BEECHER v. GILLESPIE.

[6 Ben. 356.] [1]

District Court, S. D. New York. Feb. Term, 1873.

WILL—VESTED REMAINDER—NOTICE OF BANKRUPTCY PROCEEDINGS.

1. In 1853 the will of T. L. C. was admitted to probate. It made G. executor, and by it all the property of T. L. C. was given to his executor, to be sold and converted into money, and the proceeds invested. The executor was to apply the income to the use of the wife of T. L. C. during her life. On her death, the executor was to stand possessed of $10,000 of the principal, in trust for a niece. and the rest he was to pay over and divide among several persons named (one of whom was A. B. C.), "their heirs, executors, administrators, and assigns forever, in equal shares, as tenants in common, per capita, the issue of any such person named who may be then dead, to take his or her deceased parent's share." On December 22d, 1869, A. B. C. was adjudged a bankrupt, and on January 22d, 1870, an assignment in bankruptcy was executed to B. The widow of T. L. C. died in April, 1872, and G. then proceeded to close up his trust, and the share to go to A. B. C., who had survived the widow, was $3,249 27. G. drew his check for that amount, dated May 11th, 1872, in favor of A. B. C., and gave it to his counsel, C., to give to A. B. C. C. had had actual knowledge of the fact that A. B. C. had been adjudged a bankrupt, and that B. was his assignee. He delivered the check to A. B. C., and took from him a release of the executor. On the 17th of May the check was deposited in

a savings bank to the credit of the wife of A. B. C., with other moneys. On the 16th of June, the savings bank was notified by B. that he claimed the money, as assignee of A. B. C., and, on the 20th of June, B. filed this bill in equity against all the parties, to recover the money: Held, that, under the will, A. B. C. had a vested interest in the money at the time of the adjudication in bankruptcy, which was part of his estate, and passed to his assignee, and it made no difference whether G. had any actual notice of the bankruptcy proceedings or not. That G. was chargeable with notice of the bankruptcy proceedings, by reason of the actual knowledge of them by his counsel, C., even though such knowledge did not recur to the mind of C. at the time of the delivery of the check.

2. That no title to the money had passed to the wife of A. B. C., or to the savings bank.

3. That the bank was entitled to deduct its costs from the fund, and must pay over the remainder, and that B. was entitled to a decree against G. and A. B. C. for the amount of the check, less the amount so paid over by the savings bank.

[In bankruptcy. Bill by John S. Beecher, assignee of Abraham B. Clark, against George D. H. Gillespie, executor, etc., of Thomas L. Clark, Abraham B. Clark, Isabella Clark, and the Citizens' Savings Bank. Decree for complainant.]

F. N. Bangs, for plaintiff.
J. P. Crosby, for Gillespie.
Marsh & Wallis, for Clark and wife.
J. E. Wheeler, for the bank.

BLATCHFORD, District Judge. On the 31st of March, 1848, Thomas L. Clark executed his last will and testament. It was duly proved as a will of real and personal estate, before the surrogate of the county of New York, on the 5th of October, 1853, and on the same day letters testamentary thereon were granted to the defendant George D. H. Gillespie, one of the executors named therein. The will, after giving two legacies of money, proceeds: "I give, devise, and bequeath to the executors and trustees in this my last will and testament named, and the survivor of them, or unto such one or more of them as may take upon themselves or himself the burden of the execution of this my last will and testament, his or their heirs, executors, administrators and assigns forever, upon trust, for the purposes of this my will, all my real estate, lands, tenements and hereditaments, whether in possession, reversion, remainder or expectancy, and all my personal estate of what nature or kind soever, not before disposed of, upon trust, to receive the rents and profits of the same hereditaments, and to recover and receive such personal estate as soon as conveniently may be, and to sell and dispose of and convey all and singular my said real estate, by public auction or private contract, unto any person or persons who shall become and be the purchaser or purchasers thereof, for the most money that can reasonably be had for the same, and to receive the moneys for which the same shall be sold; * * * and I will and direct my said trustees and ex-

----

[4] [From 10 N. B. R. 398.]
[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

ecutors to invest the proceeds of my personal estate, and the moneys arising from the sale of my real estate, after payment of all my just debts, and of the aforesaid legacies, in government or real securities, or in bank or other stock, with power, from time to time, to alter and transpose such securities or stocks, at their discretion; and, as to the dividends, interest and income to arise from the said stocks, funds and securities, and the rents and profits of my said real estate, to be received by my said executors, I direct that my said trustees and executors do and shall apply the same to the use of my said wife, to and for her own sole benefit, for and during her natural life; * * * and, from and immediately after the decease of my said wife, I will and direct that, as to ten thousand dollars of the principal moneys to be invested as aforesaid, my said executors and trustees shall stand possessed of the same, in trust, to apply the interest thereof to the use of my niece, Mary Ann, the wife of my executor George D. H. Gillespie, for and during her natural life; * * * and, as to all the rest and residue of the said principal moneys to be invested as aforesaid, I will and direct, that, from and immediately after the decease of my said wife, my said executors and trustees shall pay over and divide the same unto and among my nephews and nieces William N. Clark, Catharine Ann Wolfe, Edwin Clark, Daniel S. Clark, and Richard Smith Clark, the children of my brother John Clark, and Abraham B. Clark, Richard M. Clark, and Mary Addoms, the children of my brother Richard S. Clark, their respective heirs, executors, administrators and assigns, forever, in equal shares, as tenants in common, per capita, the issue of any such child or either of my said brothers who may be then dead, to take his or her deceased parent's share."

On the 22d of December, 1869, the defendant Abraham B. Clark, named in the will as a child of Richard S. Clark, was adjudged a bankrupt by this court. The plaintiff was appointed his assignee, and, on the 22d of January, 1870, an assignment under the bankruptcy act, in the usual form, was executed to the plaintiff.

The widow of Thomas L. Clark, the testator, died in April, 1872, and the defendant Gillespie then proceeded to close his trust. After providing for the $10,000 set apart for the use of his wife, he ascertained the balance left for distribution to be $25,994 14. Of this sum, one-eighth, or $3,249 27, was to go to the defendant Abraham B. Clark, who survived the widow. The entire fund was on deposit in a bank to the credit of the defendant Gillespie, as executor. A check on such bank for $3,249 27, drawn by the defendant Gillespie, as executor, payable to the defendant Abraham B. Clark, or order, and dated May 11th, 1872, was, by the direction of the defendant Gillespie given to the defendant Abraham B. Clark. He signed a release to the executor, on receiving the check, on the 16th of May, 1872. He also indorsed his name on the check. The check, so indorsed, was, on the 17th of May, 1872, deposited in the bank of the defendants the Citizens' Savings Bank, to the credit of the defendant Isabella Clark, the wife of the defendant Abraham B. Clark, and formed part of a sum of $3,250 credited by said bank to her account that day, as deposited to her credit that day. The check for $3,249 27 was collected by the Citizens' Savings Bank. On the 6th of June, 1872, Isabella Clark had on deposit to her credit in the said savings bank $4,290. On that day she withdrew from it $76, leaving $4,214. On the 16th of June, 1872, the said savings bank was notified, in writing, by the plaintiff's attorneys that the check referred to was obtained by the fraud of Abraham B. Clark, that said Clark was adjudged a bankrupt on the 22d of December, 1869, and that they were requested to retain the proceeds of the check to abide such formal claim as might be made upon them. The bill in this suit was filed on the 20th of June, 1872. The savings bank has allowed interest to Isabella Clark, on her deposits, at the rate of six per cent. per annum. On the 1st of July, 1872, the bank credited her account with $32 25 interest, and, on the 31st of August, 1872, she withdrew from the bank $996, leaving to her credit there $3,250 25. All the other legacies provided for by the will have been paid, and all the other legatees have given releases to the defendant Gillespie.

The bill alleges that the defendant Gillespie, although knowing of the insolvency of Abraham B. Clark, and having notice of the appointment of the plaintiff as his assignee, and of the title of the plaintiff to the legacy, placed the amount of the legacy in the hands of Abraham B. Clark; and that Abraham B. Clark, with intent to defraud the plaintiff, and to prevent the said sum from coming to the plaintiff's possession, fraudulently placed it in the hands of the Citizens' Savings Bank, and caused the bank to enter it on its books as a sum deposited with the bank by his wife, the defendant Isabella Clark.

The bill prays for a decree that the plaintiff is entitled to the amount of the legacy, and the interest thereon, and that the defendants may be decreed to account for and pay the same to the plaintiff; that Abraham B. Clark and his wife may be enjoined from collecting the amount of the legacy, or the proceeds thereof, from the savings bank and from Gillespie; and that the bank and Gillespie may be enjoined from paying the amount of the legacy, or the proceeds thereof, to any other person than the plaintiff.

The answer of Gillespie avers, that, not knowing that Abraham B. Clark was insolvent, or that the plaintiff was his assignee in bankruptcy, and having had no notice thereof, he, in good faith, gave the check to Abraham B. Clark. It denies the right and

title of the plaintiff to the money, and avers, that, if the fund belongs to the plaintiff, the savings bank should be decreed to pay the amount deposited with them, with interest thereon, to the plaintiff, they holding the same in trust for the account of Abraham B. Clark.

The answer of Abraham B. Clark and his wife avers that the legacy was rightfully paid to Abraham B. Clark; that, under the will, he was the only person entitled to it; that the plaintiff never had any right, title, or interest in it, and it never vested in him; that it did not vest in Abraham B. Clark until after the appointment of the plaintiff as assignee, and until the death of the widow; and that Abraham B. Clark, being indebted to his wife in a large amount of money, paid to her, on account of such indebtedness, the sum which he received as the legacy, and she deposited it, as her own money, with the savings bank, and it was mingled with other moneys deposited there by her.

The answer of the savings bank admits that Isabella Clark has on deposit with the bank a larger sum of money than that paid to Abraham B. Clark by Gillespie, and leaves the plaintiff to prove his case.

It is urged, for the defendants, that, under the will, the legacy did not vest in Abraham B. Clark until the death of the widow of the testator, in April, 1872; that, under the will, the whole property was converted into personal estate, for all purposes; that no specific legacy was absolutely given to Abraham B. Clark with merely a postponement of the time of payment, till the death of the widow, so as to vest the legacy in him on the death of the testator; that, as the proceeds in the hands of Gillespie were not to be divided until the death of the widow, the share of Abraham B. Clark did not vest in him until the death of the widow; that no portion of the estate was set apart for Abraham B. Clark, payable in the future; that, until the death of the widow, it could not be determined who were entitled to the legacies; and that Abraham B. Clark could not have assigned or disposed of the legacy before the death of the widow, so as, as against his issue, to have vested a title to the legacy in the transferee, if he himself should not survive the widow.

It is impossible to distinguish this case from that of Lawrence v. Bayard, 7 Paige, 70. There, on the death of Margaret Leake, one-fourth of the proceeds of some bank stock was to be paid to the then surviving oldest son of William Bayard, the elder. He had two sons, William and Robert, of whom William was the elder, and both of whom survived Margaret Leake. Before the death of Margaret Leake, William, in 1832, sold and assigned to one Hall his contingent interest in the proceeds of the bank stock to which he would be entitled as the eldest son, if he should survive Margaret Leake.

Hall claimed, under the assignment, as against creditors of William, who, after the death of Margaret Leake, took proceedings to reach the interest of William in the property. It was contended, for the creditors, that the interest of William was a naked possibility, which could not pass by assignment. The chancellor says: "There is no foundation for the objection that the interest of W. Bayard was of such a nature that it could not pass by sale or assignment before the death of Mrs. Leake. It was not a mere naked possibility coupled with an interest; but it was a vested remainder in one-fourth of the six hundred shares of the bank stock, according to the statutory definition of vested remainders, for W. Bayard was the person in being and ascertained, who would, at the time of the assignment, in 1832, have had an immediate right to the possession of such bank stock, if the life estate of Mrs. Leake therein had then ceased. See 1 Rev. St. p. 723, § 13. He was the oldest son, to whom this remainder in fee was limited, subject only to be divested by his death during the continuance of the particular estate or interest of Mrs. Leake, and in the lifetime of his brother Robert. The limitation of the remainder in fee to W. Bayard was, therefore, vested in interest. But I admit the substituted remainder to Robert necessarily remained contingent so long as his elder brother was living. Nothing could defeat W. Bayard's right to the bank stock or its proceeds, as an interest in possession, if he continued to live until the life interest of Mrs. Leake terminated. And it is the present capacity of the individual to take the remainder in possession, if the particular estate should immediately determine, which vests his remainder in interest; and not the absolute certainty that such remainder will ever in fact become vested in possession in him. Per Nelson, C. J., 16 Wend. 137; Watk. Conv. (8th London Ed.) 123; 5 Paige, 466. And nobody ever doubted that a remainder which was vested in interest could be transferred, both at law and in equity. Again, the Revised Statutes, which were in operation when this sale was made, have declared, in express terms, that expectant estates are devisable, descendible and alienable, in the same manner as estates in possession. 1 Rev. St. p. 725, § 35. And, by an examination of the several provisions of the Revised Statutes, it will be seen, that, by the term 'expectant estates,' the legislature intended to include every present right or interest, either vested or contingent, which may, by possibility, vest in possession at a future day. The mooted question, whether a mere possibility coupled with an interest is capable of being conveyed or assigned at law, is, therefore, forever put at rest in this state." In the present case, Abraham B. Clark was the person in being, and ascertained, who would, at the time of the commencement of the proceedings in bankruptcy, to which time the

plaintiff's title, by assignment, relates back, have had an immediate right to the possession of the legacy, if the life estate of the widow had then ceased. The remainder in fee was limited to him, subject only to be divested by his death during the life of the widow. The limitation of the remainder in fee to him was, therefore, vested in interest. Nothing could defeat his right to the legacy, as an interest in possession, if he continued to live until the life interest of the widow terminated. He had, at the commencement of the proceedings in bankruptcy, a then present capacity to take the remainder in possession, if the particular estate should immediately determine. It is of no moment that he might have died before the widow died. If he had so died, the remainder in fee would have been divested. But it was vested in interest in him at the commencement of the proceedings in bankruptcy, and it was then transferable by assignment. Moreover, his interest, under the will, to the legacy, was an expectant estate, because it was a present right or interest, either vested or contingent, which might, by possibility, vest in possession at a future day.

That the right to the legacy passed to the plaintiff, as assignee in bankruptcy of Abraham B. Clark, under section 14 of the act, there can be no doubt. It was a part of the property and estate of the bankrupt. Moreover, it was, at least, a right in equity.

The title of the plaintiff to the legacy vested at the commencement of the proceedings in bankruptcy, and certainly was vested by the making of the assignment on the 22d of January, 1870. The question is one of title; and it makes no difference whether Gillespie had or had not notice of the bankruptcy of Abraham B. Clark, and of the assignment to the plaintiff, when he gave the check to Abraham B. Clark. The money which Gillespie caused to be paid on the order of Abraham B. Clark, indorsed on the check, was the money of the plaintiff; and, even if Gillespie dealt with Abraham B. Clark in good faith, and without notice of the bankruptcy proceedings, still he is not protected, as against the plaintiff. Mays v. The Manufacturers' Nat. Bank, [64 Pa. St. 74;] Miller v. O'Brien, [Case No. 9,586.]

But, the evidence in the case is sufficient to charge Gillespie with notice of the plaintiff's title. Gillespie testifies that he delivered the check to his counsel, Mr. Crosby, with the instruction to him to notify Abraham B. Clark to call on him and obtain the check. Mr. Crosby's clerk testifies that Abraham B. Clark came to Mr. Crosby's office, in the absence of Mr. Crosby, and that he, the clerk, under Mr. Crosby's instructions, gave the check to Abraham B. Clark. Mr. Crosby is shown to have known, in June, 1871, of the bankruptcy of Abraham B. Clark, and of the fact that the plaintiff was his assignee in bankruptcy, and to have been, at that time, a creditor of Abraham B. Clark, and of his

former partner, Bininger, and to have at that time made claim, to the plaintiff's attorney, to a lien for his debt on property which the plaintiff, as assignee, was about to sell at auction, and to have attended, early in the summer of 1871, at the sale (at which the plaintiff, as assignee in bankruptcy of Clark and Bininger, was announced as the seller), and there given notice publicly of his claim, and to have been examined, before May, 1872, and after such sale, as a witness on the part of the plaintiff, in a suit brought by the plaintiff, as assignee in bankruptcy of Clark and Bininger. There is no evidence to show that Mr. Crosby did not, at the time the check was delivered to Abraham B. Clark, have knowledge of the fact that Abraham B. Clark was an adjudged bankrupt, and that the plaintiff was his assignee in bankruptcy; or to show that the knowledge which he had in June, 1871, and afterwards, was not retained by him until and at the times the check was delivered to Abraham B. Clark and the money was drawn on it, and was not then present to his mind in fact, although he did not happen to recur to it. It was knowledge which he was at liberty to communicate to Gillespie. To suppose that he did recur to it, and yet did not communicate it, would imply fraud. No suggestion of that kind can be or is made. Yet the fact, which must be assumed, that he did not recur to the knowledge, is no evidence, in view of the short lapse of time, that the knowledge was not retained by him and was not present to his mind, in the sense of the rule laid down in the Case of The Distilled Spirits, 11 Wall. [78 U. S.] 356. Mr. Crosby gives no testimony on the subject. On the facts of this case, and under the decision in the case cited, I think that Gillespie was bound by the knowledge possessed by Mr. Crosby.

No attempt has been made to prove the indebtedness set up, of Abraham B. Clark to his wife; and, so far as respects the $3,249 27, acknowledged by the Citizens' Bank to have been received by it on the 17th of May, 1872, it must be regarded as the specific money which went out of the funds of Gillespie, as executor, and as standing in the same position as if it were still in the hands of Abraham B. Clark. As against the plaintiff, it was fraudulently obtained by Abraham B. Clark from Gillespie. No title to it has passed to the savings bank or to Isabella Clark. No person has taken it from Abraham B. Clark in the course of business, or allowed an equivalent for it; and the plaintiff has a right to follow it into the hands of Abraham B. Clark and of Isabella Clark, and of the savings bank.

The plaintiff is entitled to a decree against the defendants Gillespie and Clark personally, for the $3,249 27, with interest from the 16th of May, 1872, and to a decree that the savings bank pay to the plaintiff, in exoneration of such liability of Gillespie and Clark, pro tanto, the sum of $3,249 27, with such in-

terest thereon, from May 17th, 1872, as such bank would have allowed on such deposit to Isabella Clark, less the amount of its costs in this suit to be taxed. When this suit was brought, the bank had on deposit to the credit of Isabella Clark, not only the $3,249 27, but $964 77 more. Isabella Clark is liable to the plaintiff for such interest as she was entitled to receive from the bank on the money, and if the bank has paid any of it to her since the suit was brought, it has paid it with notice. The bank is entitled to charge Isabella Clark in account with the amount it shall so pay to the plaintiff, and to be protected against any claim by her hereafter for such amount, by an injunction to that effect.

The plaintiff is entitled to costs against all the defendants but the bank, and the bank must recover its costs, in the manner above mentioned.