JOHN E. HILES, PLAINTIFF, *v.* WILLIAM R. FISHER AND MARIA J. FISHER, DEFENDANTS.

*Deed to husband and wife — mortgage by the husband alone — married women's acts.*

Under a deed to a husband and wife, as such, the husband and wife take as tenants by the entirety, and upon the death of either the survivor takes the whole estate; and the rule at common law that, in such a case, the husband has the control and use of the property during the joint lives was not changed by the married women's acts, chapter 200 of the Laws of 1848, as amended by chapter 375 of the Laws of 1849, and chapter 90 of the Laws of 1860.

As an incident of such control of the property by the husband, a mortgage thereof made by him alone, during the joint lives, is operative so far as to convey an estate during the joint lives of the husband and wife and the fee in case the husband survives the wife; and this is so, even though the wife furnished the entire purchase-price of the property, provided she consented to the form of the deed to her husband and herself.

SUBMISSION of controversy upon an agreed statement of facts under section 1279 of the Code of Civil Procedure.

The submission was filed in Tompkins county October 10, 1892, and the following are substantially the facts as therein stated:

The defendants are and for the past thirty years and upwards have been husband and wife. On or about the 22d of March,

1866, the defendants, by a deed to them as husband and wife, took title to a farm of about forty-four acres in the town of Dryden, Tompkins county, N. Y., which they have ever since occupied and possessed as their home under said deed, with no other title. This deed runs to "William R. Fisher of the town, county and State aforesaid, and Maria J. Fisher, his wife," and the consideration therein stated is $3,000. It was duly recorded on the 9th of May, 1866. The purchase-price was wholly paid by the wife, who, however, consented to the form of the deed as taken by them.

On or about March 31, 1885, the defendant, William R. Fisher, borrowed of the plaintiff $1,400, for which he and his wife gave their promissory note. On or about February 20, 1886, William R., to secure the payment of this debt to plaintiff and other small amounts of borrowed money amounting, then, altogether to $1,550, executed and delivered to one Goodrich, for plaintiff, a mortgage in the usual form granting and conveying the said forty-four acres and conditioned for the payment of $1,550, one-half in one year and balance in two years, with interest at five per cent annually. This mortgage was dated and acknowledged February 20, 1886, and was immediately assigned to plaintiff. It was recorded August 5, 1890. Fisher, out of the money which he borrowed of plaintiff, used $1,000 in part payment for thirty-five acres of land in the same town, the title to which he had taken in his own name. At the time the mortgage was given the plaintiff knew that the wife's money paid for the forty-four acres and that she refused to sign the mortgage, but he supposed that William R. Fisher held the title and the wife had only her dower right therein, and he, therefore, said that the mortgage was good enough without her signature and so took it, and he told the defendants that he did not calculate that William R. should ever pay the mortgage; that he calculated to give it to him by his will and all he wanted was the interest while he lived. The description in the mortgage was copied from the deed, which was present when the mortgage was executed and delivered.

On the 3d of September, 1890, William R. Fisher conveyed to Maria J. Fisher both of said parcels of land by quit-claim deed, recorded that day. Default was made in the payment of interest on the mortgage and it was duly foreclosed by statutory foreclosure, and on the sale thereunder, which occurred February 6, 1892,

the premises were bid in by the plaintiff for the sum of $500, the amount then unpaid on the mortgage being $1,863.37 besides the expense of foreclosure, thereby vesting in plaintiff the entire fee so far as the mortgagor could lawfully have conveyed at the date of the mortgage under the same circumstances. Notice of the foreclosure was duly served on both defendants.

Mrs. Fisher thereafter and before the sale commenced an action in the Supreme Court against the plaintiff and said Goodrich and her husband, asking that the mortgage be declared void, as to her, and be set aside as a cloud upon her title, and that the foreclosure of the mortgage be restrained. A temporary injunction was obtained, but was vacated by the court upon the papers upon which it was granted. On the foreclosure sale Mrs. Fisher gave notice of her claims. After the sale the plaintiff duly demanded possession of each of the defendants and they severally refused to deliver the same and now withhold it.

Upon these facts the plaintiff claims the right to recover the possession of the premises, with the right to hold the same during the joint lives of the husband and wife and full title to the same in case the husband survives the wife. The defendant, Mrs. Fisher, claims that the mortgage not being signed by both is void and that now, Mr. Fisher's interest having been conveyed to her, she is the absolute owner; that by reason of her having paid for the property she is the equitable owner of the whole; that in any event she is entitled to the possession during the joint lives of herself and husband and to the fee in case she survives.

*George E. Goodrich* and *M. M. Waters*, for the plaintiff.

*Smith & Dickinson*, for the defendants.

MERWIN, J.:

This is, in substance, an action by the plaintiff to recover the possession of certain real estate, and to have the nature and extent of his interest therein declared. A defense is interposed both in a legal and equitable aspect. The plaintiff's rights depend upon the extent of the power of the mortgagor to convey or transfer his interest in the property.

By the case of *Bertles* v. *Nunan* (92 N. Y., 152) it is settled

that, under a deed like the one here to the defendants, the husband and wife take as tenants by the entirety, and that upon the death of either the survivor takes the whole estate. This is by virtue of the rule at common law, and it was conceded in the Bertles' case that, under that law, the husband had the control and use of the property during the joint lives. That was one of the characteristics of the estate, and it necessarily continues to be such, unless it has been eliminated by the married woman's acts so-called. The defendants place reliance upon chapter 200 of the Laws of 1848 and chapter 90 of the Laws of 1860. The trouble with the defendants' argument on this line is, that the Court of Appeals, in the Bertles' case, held that those acts do not affect the existence of the estate by the entirety, and if they do not affect the estate itself, they do not affect the incidents or characteristics, unless there is some special provision that may apply to the latter and not to the former. There is no such special provision. In *Goelet* v. *Gori* (31 Barb., 314) it was held that the act of 1848, as amended in 1849 (chap. 375), did not affect the right of the husband under such an estate to the entire use, and a similar doctrine was held in *Farmers and Mechanics' National Bank* v. *Gregory* (49 Barb., 155), having reference to the act of 1860, as well as to the acts of 1848–9. In that case it is said by Judge JOHNSON : " Neither can sell without the consent of the other, and the survivor takes the whole. But during the life of both, the husband is entitled to possession of the entire estate, and to the rents and profits, and may even alien the wife's interest during their joint lives. And the estate will, it seems, be in such alienee, subject to the right of the wife or her heirs, to enter and enjoy the same at the death of the husband, freed and discharged from all his debts and engagements." In *Barber* v. *Harris* (15 Wend., 615) it is said of such an estate by NELSON, Ch. J., that " during the life of the husband, he undoubtedly has the absolute control of the estate of the wife and can convey or mortgage it for that period." This right to mortgage is recognized in *Snyder* v. *Sponable* (1 Hill, 569). In *Beach* v. *Hollister* (3 Hun, 519) it was held that the husband had the absolute control of the estate of his wife during his life, and might mortgage, lease and convey his interest, and that it was subject to sale on execution. In *Coleman* v. *Bresnaham* (54 Hun, 621) a like rule was held. In *Demby* v. *City of Kingston* (60 Hun, 294) it seems to have been necessarily

held that the husband was entitled to the use during the life of both parties. This case was affirmed in the Court of Appeals without opinion. (133 N. Y., 538.)

The case of *O'Connor* v. *McMahon* (54 Hun, 66) is pressed upon our attention by the defendant's counsel. There it was held that where a conveyance is made to a husband and wife as grantees, and they subsequently separate, the husband voluntarily leaving the wife in the possession and control of the premises, the wife is entitled to the possession as against a subsequent grantee of the husband alone. Force was given to the circumstance that the husband had voluntarily yielded to the wife the possession and control, and it was said that the husband could then do no act which would deprive her of the enjoyment of such possession. In the same court, however, in a subsequent case (*Grosser* v. *City of Rochester*, 60 Hun, 380), it was said, with apparent unanimity, that, under the doctrine of *Bertles* v. *Nunan*, the husband, during the joint lives of the husband and wife, "has the right to the exclusive benefit, use, possession and control of the land, and may take all the profits thereof ; and' may mortgage or convey an estate to continue during the joint lives; but he may not make any disposition of the land that should prejudice the right of the wife in case she would survive him."

In *Gifford* v. *Rising* (55 Hun, 61), where a creditor's bill was brought to reach the interest of the judgment-debtor in an annuity created by the will of his father, charged upon real estate, and payable semi-annually to the judgment-debtor and his wife for their support, and that of their family during their lives, it was held that, during the joint lives of the annuitants, the husband was entitled to the entire annuity, and the whole was liable for his debts. In *Ward* v. *Ward* (14 Ch. Div., 506), it was held that, in such a case, the wife had no equity to a settlement. (See 2 Kent's Com., 141, marginal paging.)

In the light of the foregoing authorities it must, I think, be held that the mortgage in question was operative, at least so far as to convey an estate during the joint lives of the husband and wife.

The farther question is what operation it had upon the fee. In *Beach* v. *Hollister*, above referred to, it is said that a purchaser upon execution sale against the husband becomes, in case the husband survives the wife, the absolute owner of the whole estate.

This proposition is supported by the case of *Ames* v. *Norman* (4 Sneed, 683; 70 Am. Dec., 269), and would apply with equal force to the case of a purchaser upon foreclosure of a mortgage that, in form, conveyed all the interest of the mortgagor. So, in 1 Washburn Real Property ([5th ed.], 707, chap. 13, § 6, sub. 3), it is laid down that "if the husband convey the entire estate during coverture and dies, his conveyance will not have affected her (the wife's) rights of survivorship to the entire estate. But if, in such case, the husband survive, his conveyance becomes as effective to pass the whole estate as it would have been had the husband been sole seized when he conveyed." A similar view is taken in Freeman on Co-tenancy (§§ 73, 74). In *Bram* v. *Bram* (34 Hun, 487) the idea seems to be recognized that a conveyance from the wife alone would, in case she survived her husband, operate to convey the title.

In some cases it is said that neither can alien any part of the estate without the consent of the other. Of such an expression the meaning is, according to Judge COWEN, in *Jackson* v. *McConnell* (19 Wend., 180), that neither can alien the entire estate. Our attention is called to an expression in the opinion, in *Zorntlein* v- *Bram* (100 N. Y., 12), that the deed of the wife alone conveyed no title. This is to be taken in connection with the issue in that case, which was simply whether the grantee from the wife alone of an undivided half could maintain partition. The deed to the hus. band and wife was in 1878, and was, therefore, not affected by chapter 472 of Laws of 1880, though the deed to plaintiff from the wife was in 1881. The court held that the case was controlled by the Bertles case, and that plaintiff could not maintain partition. For that purpose at that time no title was conveyed. There was no occasion to decide whether the deed of Mrs. Bram would, in case she survived her husband, operate to pass the estate, and it is not to be assumed that there was any design to pass upon the question whether, in any event, the separate deed of the wife or of the husband would become or be operative upon the title. Under the Code (§ 1532) tenants by the entirety are not given the right to nave partition.

In the old cases, the limit of the power of alienation by the husband is that he cannot alien so as to cut off the right of survivorship of the wife. In *Back* v. *Andrew* (2 Vernon, 120), decided in 1690,

it is said " the husband cannot alien, nor dispose of it, so as to bind the wife." The question was, whether a mortgage given by the husband barred the surviving wife after his death. In *Doe* v. *Parratt* (5 Dunford & East, 652), decided in 1794, the question was whether the deed of the husband alone barred the wife, she surviving her husband; and Kenyon, Ch. J., said " it has been settled for ages, that when the devise is to the husband and wife, they take by entireties and not by moieties, and the husband alone cannot, by his own conveyance, without joining his wife, divest the estate of the wife." So, in 1 Bright on Husband and Wife (25), it is laid down that " one peculiarity of this tenancy is, that the husband cannot alone convey the property so as to affect the interest of the wife surviving, who will be entitled to the whole." (See, also, 2 Kent's Com., 133 ; 1 Wash. on Real Prop., 707, sub. 3a.)

By our statute (4 R. S. [8th ed.], 2434, § 35) expectant estates are alienable in the same manner as estates in possession, and by the term " expectant estates," as said in *Lawrence* v. *Bayard* (7 Paige, 76), the legislature intended to include every present right or interest, either vested or contingent, which may, by possibility, vest in possession at a future day. The husband in this case had, in substance, a contingent remainder, and I see no good reason why he had not power to execute a deed which would operate to convey all his interest, and so operate to carry the fee in case he survived the wife. This conclusion is, I think, authorized by the weight of authority, although in some States a different conclusion is reached, based to some extent on statutory provisions. (*Chandler* v. *Cheney*, 37 Ind., 391 ; *Corinth* v. *Emery* 63 Vt., 505.)

But it is urged by the defendants that the fact that the wife paid the entire purchase-price places her in a better position. As to this it is to be observed that she consented to the form of the deed as taken. It must, therefore, be assumed that she was content to have such rights as the law awarded to her in that kind of ownership. It was so held in *Ward* v. *Krumm* (54 How., 95). In *Persons* v. *Seargent* (132 N. Y., 590) it had been held at Special Term, in case of a deed to husband and wife, that the fact that each paid one-half the purchase-price, and that from the time of the purchase to the death of the husband they divided the proceeds of the property equally between themselves, did not prevent the wife from

taking the whole as survivor. The decision at Special Term was affirmed at General Term and in the Court of Appeals.

The mortgage was for $1,550. Of this, $1,400 was to secure a note given the year previous and signed by the wife as well as the husband. One thousand dollars of the fourteen hundred was applied by the husband in part payment for thirty-five acres of land, the title of which was taken in his own name. Afterwards and in September, 1890, the husband conveyed to the wife both parcels of land. The consideration of this transfer, except, perhaps, by inference, does not appear, nor does the value of the thirty-five acres appear. Whether either party had any other property does not appear. I think the wife has not made out a case for equitable protection against the mortgage.

It follows that the plaintiff is entitled to judgment awarding him possession of the property and declaring that his estate in the property is the right to the use during the joint lives of the defendants, and that he is entitled to the fee in case the husband survives the wife, and that the wife has no equity superior to plaintiff's rights under the mortgage.

MARTIN, J., concurred.

HARDIN, P. J.:

I am disposed to agree to the doctrine of the foregoing opinion, though the opinion in *Albrecht's Estate* (32 N. E. Rep., 632) gives rise to some hesitation.

That opinion says: "What would be the legal rights of the parties, where, upon a purchase of real property, the husband and wife had each contributed from their separate estates equally, or in any other ascertained proportion, to the payment of the consideration does not as yet seem to have been the subject of judicial decision."

Judgment ordered for the plaintiff as stated in the opinion, with costs.