# COURT OF ERRORS AND APPEALS,

## JUNE TERM,

## 1889.

———•———

SAMUEL HUTCHISON, Complainant below, Appellant, *v.* SAMUEL
  ROBERTS and DANIEL PALMATARY, Defendants below, Re-
  spondents.

*Principal and Surety—Contribution—Married Women.*

A, B and C severally became surety for D in three separate judgment bonds, each
  arising out of separate transactions. Afterwards D executed a judgment bond
  to A, B, and C, jointly, in the body of the condition of which were the following
  words: "Note: This bond is given as further security as my indorser on cer-
  tain judgment bonds, and for the mutual benefit of each party named in the
  within obligation, according to liability for me as surety." On this bond judg-
  ment was entered. A, B and C paid the sums for which they were respect-
  ively liable as sureties for D, and took assignments to themselves. Then the
  wife of D paid to B and C, respectively, the amounts they had paid for her
  husband, and took an assignment, at her risk of collection, of their interests in
  the joint bond. *Held*, that the money paid by Mrs. D to B and C for their
  interests in the judgment was not the money of her husband, but her own sole
  and exclusive property. She was the purchaser of and became the assignee of
  B and C, with the knowledge and consent of her husband.

A, B and C, being sureties on separate instruments, did not become co-sureties by
  being co-obligees in a bond of indemnity for those debts; and the equitable
  principle of contribution among individuals subject to a common burden does
  not apply so as to give A his *pro rata* share of the money paid to B and C.

The interest of each of the obligees in the bond was assignable in equity.

By statute a man's wife may lawfully possess, enjoy and invest her own sole and separate property, and her legal and equitable rights and interests therein will be preserved and protected.

COMEGYS, C. J., dissenting.

*( June 29, 1889.)*

APPEAL FROM COURT OF CHANCERY in Kent County. Affirmed.

The following facts were proved and admitted.

(1) On the 13th of September, 1873, John H. Bewley executed his judgment bond to T. Foxwell for the real debt of $1000, with Samuel Hutchison as surety.

(2) In Augus, 1873, Bewley gave his bond to John Numbers for $1,000, with Samuel Robert as surety.

(3) On the 10th of October, 1877, Bewley gave bond to William Sharp for $700, with Daniel Palmatary as surety.

It is further proved and admitted that these several liabilities were totally distinct, arising out of separate transactions, having no connection with or relation to each other.

(4) On the 12th of October, 1878, Bewley executed his judgment bond, to Hutchison, Roberts and Palmatary, for the the real debt of $1,950, and in the condition the purpose is declared to be " as further security as my endorsers on certain judgment bonds and for the mutual benefit of each party named in the within obligation according to liability for me as surety," on which bond judgment was entered October 14, 1878.

It is admitted by the complainant that the above three bonds were all the indebtedness in which the complainant or defendants were sureties.

(5)   It is shown that on the same 14th day of October, 1878, Bewley made an assignment to Samuel Hutchison, for his own use, of a judgment at his suit against John Hutchison, which the complainant received, as he admits in his bill, and as part of the liability for which he was bound as surety.

(6)   On December 10, 1881, Palmatary paid Sharp $875, the then amount of his liability, and took an assignment of the judgment of Sharp against Bewley to his own use.

(7)   On December 12, 1881, Roberts paid to Numbers $630.05 the sum for which he was surety.

(8)   On December 12, 1881, Mary J. Bewley paid to Roberts $630.05, the amount which he had paid to Numbers, and took from him an assignment, at her risk, of his part and interest in the judgment of Hutchison, Roberts and Palmatary v. John H. Bewley.

(9)   On the same day Mary J. Bewley paid to Palmatary the sum of $700, with interest from October 10, 1877, which he had paid to Sharp, and took from him a like assignment, and also an assignment, at her risk, of the judgment which Sharp had entered against Bewley and which had been assigned to him.

It is further shown and admitted that the money thus paid by Mary J. Bewley was her own money—in no way derived from her husband, and that no money was paid, nor anything transferred or delivered by John H. Bewley to either of the defendants.

In the court below SAULSBURY, Chancellor, delivered the following opinion:

Where there are two or more sureties for the same principal debtor or for the same debt or obligation, whether on the same or different instruments, and one of them has actually paid or satis-

fied more than his proportionate share of the debt or obligation, he is entitled to a contribution from each and all of his cosureties, in order to reimburse him the excess paid over his share, and thus to equalize the common burden. The same doctrine applies and the same remedy is given between all those who are jointly or jointly and severally liable on contract or in the nature of contract.

This principle does not apply where the debt or obligation for which there are two or more sureties for the same principal debtor is not the same. One or more obligees in a bond of indemnity given to three persons by a principal debtor for whom they were severally sureties (but not for the same debt or obligation, and on different instruments,) according to their liability as such sureties for the principal debtor, are not liable to account in equity to their co-obligee in said bond for the sale or assignment of their individual interests in said bond of indemnity or judgment thereon, or for the money received from a purchaser of said interests for a valuable consideration.

The complainant, Samuel Hutchinson, Jr., was surety for John H. Bewley, to one Tilghman Foxwell, in a judgment bond for the payment of $1,000. Samuel Roberts was surety for said Bewley to Charles Numbers in a bond, the debt of which originally was the sum of $1,000.

Daniel Palmatary was surety for said Bewley to William Sharp for the sum of $700. Bewley, on the 12th day of October, 1878, executed a judgment bond, to said Hutchinson, Roberts and Palmatary, in the sum of $3,900, conditioned for the payment to them of the sum of $1,950. In the body of the bond there was a note in the words "This bond is given as a further security as my indorser on certain judgment bonds and for the mutual benefit of each party named in the within obligation, according to liability for me as surety."

Judgment was entered on the bond so executed by Bewley in favor of his said indorsers on the 14th day of October, 1878. The several sureties afterwards paid the several sums of money, respec-

tively, for which they were respectively sureties. The sum paid by Hutchinson on the 13th day of July, 1882, was $1,290. Samuel Roberts, on the 12th day of December, 1881, paid the sum of $630.05 principal and interest to Charles Numbers.

Daniel Palmatary paid to William Sharp, on the 10th day of December, 1881, the sum of $875 principal and interest; and each of the sureties respectively took assignments of the evidence of their indebtedness respectively, as sureties for said Bewley.

On the 12th day of December, 1881, Daniel Palmatary assigned, transferred and set over all his part, share and interest in the judgment in favor of Samuel Hutchinson, Jr., Samuel Roberts and Daniel Palmatary, *versus* John H. Bewley, unto Mary J. Bewley, wife of John H. Bewley, at her risk of collection, in consideration of the sum of $700, with interest thereon from October 10, 1887, that being the amount for which he, said Palmatary, was liable as surety for said John H. Bewley, and which had been paid by him.

On the same day Samuel Roberts made a similar assignment of his part, share and interest in said judgment, for the sum of $630 (being the sum for which he was liable as surety for said John H. Bewley, to Charles Numbers,) unto the said Mary J. Bewley, wife of John Bewley, expressly at her risk of collection. The judgment of Samuel Hutchinson, Jr., Samuel Roberts and Daniel Palmatary *v.* John H. Bewley, was the same judgment recovered by them against John H. Bewley on the said bond, executed in their favor by Bewley to them as his sureties as aforesaid.

It is not disputed, but in fact admitted, that the money so paid to Palmatary and Roberts as a consideration of their respective assignments in said judgment to Mary J. Bewley was her own individual and exclusive property and money, and not the money of John H. Bewley, her husband.

Hutchinson has never received anything from anybody in consideration of payment of his share, part and interest in said judgment of himself, Roberts and Palmatary against Bewley, and has

never made any assignment thereof to any person.   It seems that John H. Bewley was at the time he executed the said bond in favor of Samuel Hutchinson, Jr., Samuel Roberts and Daniel Palmatary and is now insolvent.   In his bill filed in this case Hutchinson, the complainant, prays:

"1. That the said Samuel Roberts may be decreed a trustee for your orator for the sum of $178.26 with interest thereon from the 12th day of December, 1881, and that the said Samuel Roberts be decreed to pay to your orator the said sum of $178.26 with interest thereon from the 12th day of December, 1881.

"2. That the said Daniel Palmatary may be decreed a trustee for your orator for the sum of $247.56 with interest thereon from the 12th day of December, 1881, and that the said Daniel Palmatary be decreed to pay to your orator the said sum of $247.56 with interest thereon from the 12th day of December, 1881.

"3. That the said Samuel Roberts and Daniel Palmatary may be decreed trustees for your orator for the sum of $425.82 with interest thereon from the 12th day of December, 1881, and that the said Samuel Roberts and Daniel Palmatary be decreed to pay to your orator the said sum of $425.82 with interest thereon from the 12th day of December, 1881.

"4. That the said Samuel Roberts may be decreed a trustee for your orator, for the excess he received beyond his just and equitable *pro rata* share or part which shall be found in the determination of this cause, and that he be decreed to pay the same to your orator with interest thereon from the 12th day of December, 1881.

"5. That the said Daniel Palmatary may be decreed a trustee for your orator, for the excess he received beyond his just and equitable *pro rata* share, or part which shall be found in the deter-

mination of this cause, and that he be decreed to pay the same to your orator, with interest thereon from the 12th day of December, 1881.

"6. That the said Samuel Roberts and Daniel Palmatary may be decreed trustees for your orator, for the excess they received beyond their just and equitable *pro rata* shares or parts which shall be found in the determination of this cause, and that they be decreed to pay the same to your orator, with interest thereon from the 12th day of December, 1881.

"7. That the complainant may have such further or other relief as the nature of the case may require."

The contention of the counsel for the complainant, if I properly understand him, is that the bond to Hutchinson, Roberts and Palmatary being joint, any payment by anybody for any interest therein, or as a consideration for the assignment of any interest therein, by any of the obligees therein, necessarily inures to the benefit of all the obligees in *pro rata* proportions, or according to their respective interests therein, as the several sureties of the said John H. Bewley. His idea seems to be that the bond of itself being property, anything received on account of any interest therein must be applied equitably for the benefit of all the obligees.

Now it is true that in one sense the bond executed by Bewley, in favor of Hutchinson, Roberts and Palmatary is property, but property not in Bewley, but the obligees in said bond ; it is what is called a chose in action. As such it is payable to, assignable by and descendible from the obligees, beneficially, according to the interests of each therein.

It is no property of John H. Bewley, nor assignable by nor transmissible from him. It is a burden or obligation upon him which is legally enforcible against any estate he may have or acquire ; and in case of his death, remaining unpaid, it would not be

30

assets of his estate, but would constitute a debt which the assets of his estate would be bound to pay.

The only effect of the assignment of his interest, in the judgment against Bewley by Roberts to Mrs· Bewley, was the substitution of her in his place, or rather to his interest therein as his assignee. The same may be said in respect to the assignment by Palmatary to her. These assignments in no respect operate as a payment by John H. Bewley or discharge him from obligation to pay any part of said judgment to any person entitled to any interest therein, whether as an original obligee or as an assignee of such obligee. The obligation of Mr. Bewley remains the same as to amount of payment on said judgment as it was at the time of the confession thereof. The beneficial interests therein have only in part been changed by the assignments made by two of the obligees to Mrs. Bewley at her own risk; so that since the assignments the beneficiaries in any money which may be received on said judgment are Samuel J. Hutchinson, Jr., and Mary J. Bewley, and not Samuel J. Hutchinson, Jr., Samuel Roberts and Daniel Palmatary.

But this in no manner affects the share and interest which Mr. Hutchinson will be entitled to receive out of the moneys which may be received hereafter from John Bewley or his estate on said judgment.

I do not understand that it was denied in the argument that each of the obligees in said bond had such a beneficial interest therein as was in equity assignable. Indeed, no question could have been raised in this respect. The right is too clear to be questioned. The only contention is whether or not Mr. Hutchinson, the complainant, is entitled in equity to have a *pro rata* share, according to the condition of the bond from Bewley to Hutchinson, Roberts and Palmatary, of the money received by Roberts and Palmatary from Mrs. Bewley, their assignee. If Hutchinson is so entitled, it must be upon the equitable principle of contribution among individuals, subject to a common burden, and where one bears more than his proper share thereof.

This right of contribution in equity may be thus described. Where there are two or more sureties for the same principal debtor and for the same debt or obligation, whether on the same or on different instruments, and one of them has actually paid or satisfied more than his proportionate share of the debt or obligation, he is entitled to a contribution from each and all his cosureties, in order to reimburse him for the excess paid over his share, and thus to equalize their common burdens.

The same doctrine applies and the same remedy is given between all those who are jointly and severally liable on contract or obligation in the nature of contract. The right, however, may be controlled or modified by express agreement among the cosureties or debtors. This doctrine of contribution rests upon the maxim "Equality is equity."

Although contribution is based upon general considerations of justice and not upon any notion of an implied promise, a jurisdiction at law has become well settled which is sufficient in all ordinary cases of suretyship or joint liability.

The equitable jurisdiction, however, still remains and has some important advantages. All the cosureties and the principal debtor being parties to the equity suit, the liabilities of each, and their exoneration by the principal debtor, can be adjusted and established by a single decree. If one or more of the cosureties are insolvent, the plaintiff can in equity obtain a proportionate increase of contribution from the others that are solvent. It seems, however, that the surety must first resort to the principal debtor, and that he can only compel contribution in equity when he has failed to obtain exoneration from the principal. In the case before me, however, it is admitted that John Bewley is insolvent. While the right to contribution exists among sureties, exoneration exists as against the original debtor; and hence it follows that in the payment made by the principal debtor to one or more of the sureties or any assignment or receipt by such of the lands, goods, chattels, rights or credits of the principal debtor, will inure to the benefit equally of

the other cosureties to whom such an assignment or transfer has not been made; and they will be entitled to contribution by the sureties to whom such assignment or transference may have been made. See 3 Pomeroy, Eq. Jur., § 1418 and notes, where the authorities are very numerously cited.

These principles conclusively show that the money, property and effects which have been received by one cosurety in discharge or payment of a debt of a principal or towards a relief from the payment of such debt must be the money, property and effects of the principal debtor and not those of a purchaser of an interest due in an obligation by the principal to the sureties or other persons.

It is not even suggested in the present case that either Roberts or Palmatary has ever received any money, property or effects of John Bewley, the principal debtor, towards the payment of the principal debt or toward their relief for the payment of the same debt or obligation. And it cannot be contended, successfully at least, that the money or other effects of Mrs. Bewley was subject to the payment of any debt of John Bewley. She had a perfect right to do what she pleased with her own; to throw it away; to give it away; or purchase from anyone any property or debt to which such person might be entitled; even these two sureties, Roberts and Palmatary, in an obligation due by her husband to Hutchinson and themselves; and no principle of equity as administered in equitable tribunals can compel them to share the amount so received by them from her.

*The bill of complaint is dismissed.*

### CAUSES OF APPEAL.

And now to wit, this fourth day of June, A. D. 1888, the following causes of appeal from the decree of the Chancellor are filed by the appellants:

1—For that the Chancellor decreed that the bill be dismissed, and that the complaintant pay the costs within three months.

2—For that the Chancellor decided that one or more obligees in a bond of indemnity given to three persons by a principl debtor for whom they were severally sureties (but not for the same debt or obligation and on different instruments) according to their liability as such sureties for the principal debtor are not liable to account in equity to their co-obligees in said bond indemnity, or judgment thereon, or for the money received from a purchaser of said interests for a valuable consideration.

3—For that the Chancellor decided that the said Samuel Roberts and Daniel Palmatary were not liable to contribute to Samuel Hutchison, Jr., any part of the money received by them on account of the sale and assignment of an interest in the judgment entered upon the bond of said John H. Bewley, made, executed and delivered to Samuel Hutchison, Jr., Samuel Roberts and Daniel Palmatary for the real debt of $1,950.   Dated October 12th, 1878.

4—For that the Chancellor decided that the said Samuel Roberts and Daniel Palmatary were not liable to contribute to Samuel Hutchison, Jr., their co-obligee, any part of the money received by them in consideration of the sale and assignment of an interest in the said judgment for the reason that the money paid to them in consideration of said sale and assignment was not the money of John H. Bewley.

5—For that the Chancellor decided that the said Samuel Roberts and Daniel Palmatory could sell and assign an interest in said judgment and not be liable to contribute to Samuel Hutchison, Jr., any part of the money paid in consideration of said sale and assignment of said judgment.

6—For that the Chancellor decided that said bond upon which said judgment was entered was not property placed in the hands of Samuel Hutchison, Jr., Samuel Roberts and Daniel Palmatary by

John H. Bewley for the mutual benefit and advantage of said Samuel Hutchison, Jr., Samuel Roberts and Daniel Palmatary·

7—For that the Chancellor decided that the interest of the said Samuel Hutchison, Jr., Samuel Roberts and Daniel Palmatary, obligeas in said bond, was divisible and that each held their interest in severalty, and might sell and assign their respective interest without liability to contribute to their co-obligees their just and proportionate share or part of the money received on such sale and assignment.

8—For that the Chancellor decided that the said Samuel Hutchison, Jr., was not entitled to contribution from Samuel Roberts and Daniel Palmatary, for the reason that the money paid to said Samuel Roberts and Daniel Palmatary on account of said sale and assignment was the money of Mary J. Bewley and not the money of John H. Bewley.

9—For that the Chancellor decided that the only effect of the sale and assignment made by Samuel Roberts and Daniel Palmatary was the substitution of Mary J. Bewley in the place of Roberts and Palmatary.

10—For that the Chancellor decided that the said Samuel Roberts aud Daniel Palmatary were not trustees for the said Samuel Hutchison, Jr., for his the said Samuel Hutchison, Jr., pro-rata share or part of the money received by them the said Roberts and Palmatary, in consideration of the sale and assignment of said judgment as made by them according to the respective amounts paid by them.

11—For that the Chancellor did not decide that Samuel Roberts and Daniel Palmatary were trustees for Samuel Hutchison, Jr., for his pro-rata share or part of the sum of fifteen hundred and five dollars and five cents, (1,505.05), the proceeds of the sale of the interest in the judgment assigned to Mary J. Bewley and Samuel Roberts and Daniel Palmatary.

For the foregoing causes the appellent prays that the decree of the Chancellor be reversed.

' *C. H. B. Day,* for complainant below, appellant :

Choses in action are property. 1 Bouvier's Law Dictionary, page 227 ; Wharton's Law Dictionary, page 142.

Bonds and mortgages pass under the designation of goods and chattels.

2 Williams on executors. Sec. 4, 853, published by R. H. Small, 1841. 1 Peere Williams, page 267, anonymous ; *Ryall v. Rolle,* 1 Atkyns, 176–182 ; 1 Bouvier's Law Dictionary, 563 ; 1 Bouvier's Law Dictionary, 224.

Bonds were not assignable at common law, but are made so by the statutes of this State. An obligation given to two or more persons is joint, and suit must be brought by them jointly during their joint lives; after the the death of any of them the right accrues to the survivors and finally to the representatives of the last survivors so far as respects the enforcing the claim against the opposite party, and each is not a creditor for his separate share.

Duke of York's Laws, 12, Sep. 22, 1676, 210, 1682–1700 ; Colonial Laws, 52, between 1726–1736 ; Vol. 1, Delaware Laws, Chap. 49, 117 ; Hall's Digest, 1829, 42; Code of 1852, title 9, Chap. 63, Sec. 8–9, 184–185 ; Survivency of action. Constitution of the State, 1792. Vol. 1, Delaware Laws, Article 6, Sec. 11 ; 41; Hall's Digest, 1829, 224 ; Sec. 11 ; Constitution 1831, Article 6, Sec. 18, 35 ; Code of 1852, Chap. 105, 375 ; 2 Pothier on obligation, 56, 57–58 ; Wharton's Law Dictionary, 103 ; *Lane v. Stacey,* 8 Allen, 41–41 ; *Doolittle v. Dwight, et. al.,* 2 Metcalf, 561–563 ; *Richardson et. al., v. Jones, et. al.,* 1 Iredell's Eq., 296 ; *Haughton, et. al., v. Bayley, et. al.,* 9 Iredell Law, 337.

Bond is contract. Every contract derives its effect from the intention of the parties that intention is expressed or inferred must be the ground and principle of every decision respecting its oper-

ation and extent, and the grand object of consideration in every question with regard to its construction.

2 Pothier on obligation, 35, No. 5, 39 ; Story on contracts, Chap. 20, Sec. 633–634 ; *Lord Arlington v. Merricke*, 3 Saunder's Reports, Star paging, 412 ; *Liverpool Water Works v. Atkinson*, 6 East Star, 508.

By the terms of the condition of the bond as expressed therein as follows : Note this bond is given as further security as my endorser on certain judgment bonds and for the mutual benefit of each party named in the within obligation according to liability for me as surety. The obligees were joint owners of the bond and all monies received by sale and assignment or otherwise was the joint money of all of them according to their liability as endorsor on certain bonds, and if one or more of them received from any source more than their proportionate part they were trustee or trustees for the others. It is immaterial whether it was the money of Mrs. Bewley, or Mr. Bewley or the money of a stranger, the doctrine of trusteeship applies. Any one or more of them could receive all or part, compromise the joint claim, release the debtor, and their co-obligees would be bound by it. Any general principle may be modified by agreement.

*Dering v. Earl of Winchelsea*, 1 Cox Ch., 318 ; *Butler et. al., v. Bulkey, et. al.*, 13 Ohio State, 514 ; *Tyus & Holmes v. De Jarnetts*, 26 Ala., new series, 280 ; *Brown v. Ray*, 18, Ch. —., 2d series, Vol. ' , 102 ; *Austin v. Hall*, 13 Johnson, 286 ; *Haughton v. Riley*, 9 Iredell R., 347 ; *Fitch & Buck v. Foreman*, 14 Johnson, 172 ; 1 Selwyn's Nisi Prius, 588 ; *Scribner v. Adams*, 73 Maine, 541–550 ; *Goodman v. Northcutt Reporter*, Vol. 24, No. 1 ; *Doolittle v. Dwight et. al.*, administrator, 2 Met., 561 ; Law of obligation, 474 ; 1848, 1849, *Ind. Reports*, 318.

*George V. Massey* and *N. B. Smithers* for respondents.

If there is any Equity in the Complainant's case, it must arise from the right to Contribution or from Contract.

## I.

(1) Contribution is an equitable right independent of Contract, and occurs when two or more persons are subject to a common burden and one bears more than his share thereof.

(2) It is not essential to this right that the instrument by which each is bound should be one and the same, but the duty must arise out of the same subject matter and be part of the same transaction.

2 Spence Equity Jurisdiction, 844 ; *Cope v. Twynan*, 1 Turner & Russel, 426 ; 12 Eng. Ch.

It is manifest therefore that the doctrine of Contribution cannot apply, for the transactions creating the liability of the sureties were wholly distinct, and there never was any common burden.

## II.

There is no right growing out of contract or agreement, either express or implied, from the taking of the bond.

(1) What is the condition ?

That the obligees shall share the money paid by *John H. Dewley*. He has paid none to the defendants.

The complainant alone has been benefited by receiving anything from him.

(2) The bond given to the three was for *"further security."*

This necessarily implies that the *original* securities should outstand and remain for the benefit of the several sureties.

All the sureties acted upon this understanding.

(3) It is still further indicated by the words " for the mutual benefit of *each* party according to liability."

(4) The manifest reason for giving the bond was, that inasmuch as there was no power to compel the creditors to place their liens, it was determined that a single lien should be created by one bond, given to the three, each preserving his several rights and liability as to his separate suretyship.

(5) The complainant acted upon this understanding in taking his assignment from Foxwell.

(6) If his present contention be just, he should have taken the assignment of the bond of John Hutchison to all the sureties, legal plaintiffs, instead of to himself alone. This was contemporaneous with the entry of the judgment and was the only thing that ever passed from Bewley to any of the sureties.

(7) The dealing between Mary J. Bewley and the defendants was a sale by them to her of their rights severally, in and to the money to be received from John H. Bewley, and a simple substitution. Any right is assignable in equity.

7 Paige, 76.

GRUBB, J.   The facts as proved and admitted are these: The complainant, Samuel Hutchinson, Jr., in 1873 became surety for John H. Bewley to Tilghman Foxwell on a judgment bond for the payment of $1,000. Samuel Roberts, one of the defendants, in the same year became surety for said Bewley to John Numbers on a similar bond for the payment of $1,000; and David Palmatary, the other defendant, in 1877 became surety for Bewley to William Sharp on another judgment bond for the payment of $700. These several liabilities were totally distinct, arising from different instruments and out of separate transactions, having no connection with or relation to each other. On October 12, 1878, said Bewley executed his judgment bond to said Hutchinson, Roberts, and Palmatary, conditioned for the payment with interest, of the sum of $1,950. Written in the body of the bond,

and as part of the condition thereof, were these words: "Note. This bond is given as further security as my indorser on certain judgment bonds, and for the mutual benefit of each party named in the within obligation according to liability for me as surety." On this bond judgment was entered October 14, 1878, in favor of the obligees his said sureties. The above specified three judgment bonds comprised all the liabilities of Bewley for which the complainant or defendants were his sureties. On the same 14th day of October, 1878, Bewley, made an assignment to Samuel Hutchinson, Jr., the complainant, for his own use, of a judgment at his (Bewley's) suit against one John Hutchinson, which he received, as he admits in his bill, and as part of the liability for which he was bound as surety. Afterwards the said sureties of Bewley paid in full the several sums of money, respectively, for which they were respectively bound as sureties as follows: On December 10, 1881, Palmatary paid Sharp $875, the then amount of his liability, and took an assignment of the judgment of Sharp against Bewley to his own use. On December 12, 1881, Roberts paid to Numbers $630.05, the then amount of his liability as surety. On July 13, 1882, Hutchinson paid Foxwell $1,291.83, the then amount of his liability as surety. On December 12, 1881, Mary J. Bewley, wife of said John H. Bewley, paid to Roberts $630.05, and in consideration thereof received from him an assignment, at her risk of collection, of his share and interest in the judgment of Hutchinson, Roberts and Palmatary against Bewley. On the same day Mrs. Bewley also paid to Palmatary $875, the amount which he had paid to Sharp, and, in consideration thereof, received from him a like assignment and also an assignment, at her risk, of the judgment which Sharp had entered against Bewley, and assigned to Palmatary, under the statute in that behalf. Hutchinson has never made any assignment of his share or interest in said judgment of himself, Roberts, and Palmatary against Bewley. The money paid by Mrs. Bewley to Palmatary and Roberts for their respective interests in the said judgment was not the money of her husband; but her own

sole and exclusive property and separate estate. Mrs. Bewley became their assignee of said interests with the knowledge and consent of her husband.

It is upon this state of facts that the complainant founded his bill, and prayed for relief in the court below, wherein he sought a decree requiring the defendants to pay to him a *pro rata* share, according to the condition of the bond of Bewley to him, Roberts, and Palmatary, of the said sums of money received by the defendants, respectively, from Mrs. Bewley as the purchaser and assignee of their respective interests in the said bond and judgment thereon. If the complainant is entitled to receive such *pro rata* share of said moneys, his right thereto must be derived through the said bond given by Bewley as further surety to Hutchinson, Roberts, and Palmatary as his sureties aforesaid. It is clear that he cannot be so entitled upon the equitable principle of contribution among individuals subject to a common burden, and where one bears more than his just share thereof. It cannot be maintained that the operation or effect of this bond was to make those co-sureties who, before its execution, were respectively several sureties to separate creditors of Bewley for different liabilities arising out of totally distinct transactions. By virtue of the bond they became co-obligees of Bewley, but they did not thereby become co-sureties for him to each of his said separate bond creditors, and as such jointly bound to each for the payment of Bewley's several and distinct liabilities to them respectively. As a matter of fact, Hutchinson was never liable as co-surety for the payment of the liabilities of Bewley, for which Roberts and Palmatary were, respectively, several sureties, and has never borne or contributed anything as his share of their respective burdens as such sureties. It is manifest, therefore, that neither the relation or the obligation of co-sureties existed between the complainant and defendants, and hence that the equitable doctrine of contribution among sureties is not applicable in this instance; so that the complainant's right (if he have any) to the relief sought by his bill must spring from some contract or agree-

ment, express or implied, found in the bond from Bewley to him and his co-obligees. The evident purpose and meaning of this bond was to secure to each of the obligees the reimbursement by Bewley of such sum as each would pay, respectively, in discharge of his several liability as Bewley's separate surety; the aggregate sum therein conditioned to be paid to be distributed *pro rata* according to such libility of each surety. Each of said obligees was therefore entitled to receive his several and distinct *pro rata* share of the said sum when the same was paid by Bewley or in his behalf. Consequently there was a right in each to have Bewley's promise to pay such *pro rata* share, according to the terms and condition of his bond, voluntarily fulfilled or appropriately enforced; and this right or chose in action might, in equity, be sold and assigned by each of the obligees respectively. This principle is so well settled that it is unnecessary to cite authorities in its support. But there is nothing in the condition of the bond or elsewhere, so far as the evidence of record discloses, which entitles the complainant, or any of the obligees, to receive from either of his co-obligees any share or portion of the proceeds of the sale and assignment by the letter of his separate interest in the bond or the judgment thereon. The right of each obligee was, under the facts proven in this case, to receive merely his *pro rata* share of what would be actually paid by Bewley, or in his behalf, in discharge of the condition of his bond. Therefore the principle question and the controlling inquiry in this case is: Has the whole or any part of the aggregate sum conditioned to be paid in his bond actually been paid to one or both of the defendants by Bewley himself, or by his wife, or any other person for him or in his behalf? It is certain that Bewley himself has not paid said sum; for he is shown to have been insolvent ever since the execution of the bond, and, consequently, unable to pay the same or any portion thereof. Nor is it alleged or contended by the complainant that the defendants have received anything for or on account of Bewley's obligation under said bond, from any person other than his

wife to whom they sold and assigned their respective interests therein. Therefore it merely remains to be considered whether or not Mrs. Bewley has, at Mr. Bewley's instance, or in his behalf, paid to the defendants, or either of them, any portion of said sum, and thereby discharged, *pro tanto*, Bewley's obligation to pay the same.

It is not claimed by the complainant that the moneys paid by Mrs. Bewley are to be regarded as a credit on account of said sum, and as operating as a satisfaction and extinguishment *pro tanto* of Bewleys's said obligation. The complainant himself expressly alleges that Mrs. Bewley was the purchaser and assignee of the defendants' respective interests in the bond and judgment thereon. He himself has actually made his case entirely and absolutely to rest upon his allegation and proofs, and to depend upon the theory that the defendants were vendors, and Mrs. Bewley a purchaser in her own name, with her own sole and separate funds. He has therefore recognized her as the vendee and assignee of the defendants' respective interests in the bond and judgment thereon, and of their right to have Bewley's obligation thereunder enforced ; and he is accordingly estopped to maintain the contrary. He nowhere alleges or proves that she purchased the defendants' said interest with the intention and purpose of discharging, *pro tanto*, her husband's said obligation. He nowhere even suggests that such was her intention or purpose. There is no affirmative proof that such was the case. Indeed, there is no evidence whatsoever which furnishes reasonable ground for even such an inference. On the contrary, the circumstances attending the entire transaction negative that inference. Taken in connection with the other facts of record, the formal assignments to Mrs. Bewley by the defendants warrant the reasonable presumption that neither she nor they understood, intended, or desired that her purchase of their interests should operate as an absolute discharge *pro tanto* of her husband's obligation ; otherwise her proper and probable course would have been to have the defendants accept and receipt for the money paid by her as a partial payment of the judgment, and not assign their interests

therein, and accept it as the purchase money therefor. In short, the assignments imply the intention and purpose on the part of both Mrs. Bewley and the defendants that the obligation of Bewley under his bond and judgment should not thereby be extinguished, but that their interests therein should be preserved and continued in her as their assignee. With this understanding, and in consideration thereof, she paid her money, and became their assignee with the knowledge and consent of her husband. With this understanding they received it. With the same understanding, and subject thereto, presumably, the complainant must—in fact actually does—claim his alleged *pro rata* share thereof; for his bill discloses that he claims such share of it *qua* purchase money for, and not as money paid in discharge of, a part of Bewley's obligation. Under the statutory law of this State Mrs. Bewley may lawfully possess, enjoy, and invest her own sole and seperate personal property; and her legal and equitable rights and intererts therein will be preserved and protected. The complainant has not shown any right on his part to require or call upon Mrs. Bewley either to pay or to purchase for his benefit any portion of her husband's said obligation. Nor has he shown that any portion of said obligation has been paid to her by her husband, or by any other person in his behalf. It does not, therefore. appear that the complainant has alleged or proved that said obligation has yet been discharged and extinguished, in whole or in part, by any payment of money or other thing, either to the defendants or to Mrs. Bewley as their assignee. Consequently the defendants could not properly be decreed trustees for the complainant, as prayed by him in his bill, as to any *pro rata* share of the purchase money paid by Mrs. Bewley as the consideration for their said assignments to her. Hence the decree of the Chancellor dismissing the complainant's bill ought to be affirmed.

PAYNTER, J., (*concurring.*) From the admissions and proof in this case it appears that John H. Bewley at different times executed three several and distinct judgment bonds to three several and

distinct obligees, with a separate and distinct surety to each bond as follows: To T. Foxwell, for the real debt of $1,000, with Samuel Hutchison as surety, on the 13th of September, A. D. 1873 ; to John Numbers, for the real debt of $1,000, with Samuel Roberts as surety, in August, A. D. 1873 ; to William Sharp for the real debt of $700, with Daniel Palmatary as surety, on the 10th of October, A. D. 1877. It further appears that these three several and distinct bonds had no connection with each other, and that the liabilities arose out of separate transactions. On the 12th of October, A. D. 1878, Bewley executed his judgment bond to Hutchison, Roberts and Palmatary, for $3,900, conditioned for the payment to them of $1,950, and used in the condition the following language: "Note. This bond is given as further security as my indorser on certain judgment bonds, and for the mutual benefit of each party named in the within obligation according to liability for me as surety." On the 14th day of October, A. D. 1878, judgment was entered against Bewley on the last-mentioned bond in favor of the said Hutchison, Roberts and Palmatary. The three several sureties on the three several bonds above named, afterwards paid the three several sums for which they were liable as sureties respectively—the amount paid by Hutchison, July 13, 1882, being $1,290 ; the amount paid by Roberts, December 12, 1881, being $630.05 ; and the amount paid by Palmatary, December 10, 1881, being $875. The said three several and distinct sureties, took three separate and distinct assignments of the several and distinct evidences of indebtedness in which they were severally and distinctly sureties as aforesaid. It also appears that on the 12th day of December, Mary J. Bewley, the wife of John H. Bewley, with her own money, paid to Roberts the sum of $630.05 and to Palmatary the sum of $700, with interest from October 10, 1877, and took from them, respectively, assignments at her own risk of their respective parts and interests in the judgment of Hutchison, Roberts and Palmatary against John H. Bewley. Nothing has ever been paid by any one to Hutchison on the judgment, and therefore no

assignment has ever been made by him to any one of his share, part, or interest of and in the same. He is still a party plaintiff in said judgment, with Mrs. Bewley assignee of Roberts and Palmatary. John H. Bewley was at the time he executed said bond in favor of Hutchison, Roberts and Palmatary, and is now, insolvent.

Authorities were cited during the argument of the case to prove the liability of co-sureties to contribution when one of them pays the whole debt, or more than his share. The principle is well settled that "where there are two or more sureties for the same debt or obligation, whether on the same or different instruments, and one of them has paid or satisfied more than his proportionate share of the debt or obligation for which they are bound, he is entitled to contribution from his co-sureties for the amount he paid in excess of his share. This doctrine is not founded in contract, but is the result of general equity, on the ground of equality of burden and benefit. *Dering v. Winchelsea*, 1 Cox, 318 ; 2 Spence, Eq. Jur. *844 ; *Coope v. Twynam*, 1 Turn. & R. 426. Where, however, sureties are bound by different instruments for distinct portions of a debt due from the same principal, if the suretyship of each is a separate and distinct transaction, the doctrine laid down in *Dering v. Winchelsea* will not apply, and there will be no right of contribution among the sureties. 1 White & T. Lead. Cas. Eq. 122. This, therefore, is not a case where the law of contribution between co-sureties is applicable. The debts for which Hutchison, Roberts and Palmatary were sureties were separate and distinct bonds, founded upon separate and distinct transactions, given to several and distinct obligees, and originally had no connection with each other whatever. Hutchison was surety in one bond for Bewley to Foxwell for $1,000. Roberts was surety for him in another bond to Numbers for another $1,000. Palmatary was another surety for him in another bond to Sharp for another debt of $700. There were three several, separate and distinct debts to three separate and distinct obligees, and co-suretyship did not exist. In the creation, therefore, of the original debts, and the making of the original

31

bonds for securing said debts, the law of contribution between co-sureties cannot arise, and is not applicable in any manner whatever, because there was no equality of burden and benefit.

The next question then arises upon the effect of the bond entered into on the 12th day of October, A. D., 1878, by Bewley, as sole obligor, to Hutchison, Roberts and Palmatary, for $1,950, wherein he said: "This bond is given as a further security as my indorser in certain judgment bonds, and for the mutual benefit of each party named in the within obligation, according to liability for me as surety." Such a bond could not and did not equalize the burden and benefit of the original sureties in the several bonds as far as their relation to each other as sureties was concerned, to render the equitable doctrine of contribution between co-sureties applicable. It did seek to proportion a benefit according to their liabilities as sureties, as far as John H. Bewley himself could do, by giving a bond of indemnity, though such bond could have been worth nothing at the time, because Bewley was then insolvent. But the sureties themselves did no act by which their burdens and benefits were equalized, to bring themselves within the rule of contribution between co-sureties. The bond was the bond of Bewley alone as the sole obligor without surety, and it is hard to understand how his act alone can change the *status* of the original sureties towards each other to equalize their burdens, even though it should attempt to proportion a benefit according to their liability. The real question, therefore, does not arise upon the right of contribution between co-sureties, but upon how a payment made by the obligor in a bond to one of several joint obligees should be applied, and whether or not such a payment has been made in this case. A payment by an obligor in a bond to one of several joint obligess is a payment to all, and if John H. Bewley had paid to Roberts and Palmatary the whole sum of $1,950, there could be no question as to their liability to pay Hutchison his proportionate part, according to the condition of the bond. It is not contended, however, that Bewley, as the obli-

gor in the bond, paid anything to either Roberts or Palmatary, but
that Mary J. Bewley purchased their respective interests in the
judgment, with her own money, and that said money was in no
way derived from her husband. Upon her paying her own money,
($700, with interest from October 10, 1877, to Daniel Palmatary,
and $630 to Samuel Roberts, these being the respective amounts
they had respectively paid as the sureties of Bewley,) the said
Roberts and Palmatary assigned their respective interests in the
said judgment of Hutchison, Roberts, and Palmatary against John
H. Bewley to Mrs. Mary J. Bewley, expressly at her own risk of
collection. Authorities have been cited to prove that the bond upon
which the judgment was entered was property; that bonds and
mortgages pass under the designation of goods and chattels; that
bonds were not assignable at common law, but are made so by the
statutes of this state; that an obligation given to two or more per-
sons is joint, and suit must be brought by them jointly during their
joint lives; that after the death of any of them the right accrues
to the survivors, and finally to the representatives of the last sur-
vivor, so far as respects the enforcing the claim against the opposite
party, and that each is not a creditor for a separate share. Such
general principles of law are uncontroverted, and it is unnecessary
to cite cases in their support. As such property, chose in action, or
chattel, the bond now under consideration belonged to the obligees,
and not to the obligor, while it was payable to, assignable by, and
descendible from, the obligees beneficially, according to the inter-
ests of each therein. John H. Bewley, as the obligor, had no con-
trol of it, and owned no property in it; but, on the other hand, it
is a burden, obligation, or debt against him, enforceable out of any
estate he may have during his life-time, or out of any estate he may
leave at his death. If in the usual form, it is payable to the obli-
gees, their executors, administrators, or assigns, and in truth is thus
payable whether the express words are used or not. The interests
of Roberts and Palmatary being assigned to her, their interests are
now as much payable to Mrs. Bewley, as their assignee, as they

were payable to them before the assignment. The assignment does not have the effect of changing the *status* of John H. Bewley as the obligor in the bond. He is still the obligor, but his obligation is to Hutchison and Mary J. Bewley jointly, instead of to Hutchison, Roberts, and Palmatary. The effect of the assignment is to substitute the assignee for the assignors. John H. Bewley has paid nothing whatever, and the assignments do not discharge him from the obligation to pay the present plaintiffs in the judgment the full amount thereof, with interest and costs, even though one of the plaintiffs now is such under and by virtue of assignments made by two of the original obligees, at the assignee's own risk of collection. The obligation of John H. Bewley to pay the sum of money named in the bond is the same, but he will be obliged now to pay it to Mr. Hutchison and Mrs. Bewley, instead of to Hutchison, Roberts, and Palmatary. The interest of Hutchison is the same as it was before the interests of the other original obligees were transferred to Mrs. Bewley, the assignee, and he will be entitled hereafter to receive the same amount from John H. Bewley during his life-time, or out of his estate after his death, as though no change had been made in the ownership of the other parts of said judgment.

The equitable right of the original obligees to transfer their interests for a valuable consideration cannot be denied. Notwithstanding the fact that she paid two of the obligees the exact amount of money paid by them as sureties, and did not pay the other obligee anything, yet the fact is also prominent in the case that she, with her own money, with which the obligor had nothing whatever to do, purchased of the said two obligees their interests in said judgment, whatever they might be, for the said sums of money paid to them respectively; and in consideration of said sums of money so paid to them respectively the said two original obligees assigned their respective interests in said judgment to the purchaser and assignee. It is not contended that the transaction is in any way tainted with fraud on the part of either Mr. Bewley or his wife. The

fact that it was her own individual money that Mrs. Bewley used in the purchase of the beneficial interests of Roberts and Palmatary precludes the idea of fraud. The two obligees certainly held assignable interests in the judgment. Mrs. Bewley was willing to give them a certain amount of money for their rights, titles, claims, interests, and demands in, to, or out of the same. It might have been virtually throwing the money away. It might have been an unwise investment, from which she might fail to realize anything whatever; yet she had a perfect right to do with her own as she saw proper. She did no wrong to Mr. Hutchison. He is in as good a position to make his money out of Bewley or his estate as he was before the assignment. It is contended that in an obligation given to two or more persons each is not a creditor for his separate share. But the question as to the effect of a payment by the obligor to one of the obligees is not the real question to be considered in this case. No pretense is made that the obligor paid either or any of the obligees their separate and distinct or divided share or shares of the bond in which they were the creditors. Their interests were undivided, and Mrs. Bewley paid the amounts named really for such undivided interests. When the assignment was made, she was substituted as plaintiff in the judgment in the places of Roberts and Palmatary. The substitution being made, Mrs. Bewley and Hutchison hold the judgment undivided; Hutchison being entitled to the same undivided interest as he held before the assignment, and Mrs. Bewley holding the undivided interest formerly held by Roberts, together with the undivided interest formerly held by Palmatary. It nowhere appears that Hutchison paid any sum in excess of his share as surety, and the rule of contribution among co-sureties does not apply until such excess is paid. Even if the present case was a case as to the rights of co-sureties, (and it is not,) the rule would not apply until one of the co-sureties paid more than his share. The rule of law as decided in *Dering v. Winchelsea,* and other cases in its support, is that "where there are two or more sureties for the same principal debtor, and for the

same debt or obligation, whether on the same or on different instruments, and one of them has actually paid or satisfied more than his proportionate share of the debt or obligation, he is entitled to a contribution, from each and all of his co-sureties in order to reimburse him for the excess paid over his share, and thus to equalize their common burdens." In the case now under consideration there were three several sureties in three separate debts of the same debt or to three separate creditors they were not surities for the same debt or obligation, either on the same or different instruments. The claimant has not paid more than his proportionate share of the debt or obligation in which he was surety. The three sureties were not in any sense co-sureties, and the appellant cannot justly make any claim in order to reimburse himself for any excess paid over his share. The equitable rule of contribution between co-sureties cannot, therefore, be made applicable in the case now before the court. The judgment has not been paid by the obligor to the obligees by the transaction in question, nor has any part or parts of the same been so paid to any of them. It therefore is not such a case that two of the obligees in the joint bond have been paid the judgment or any part of the judgment for which they must account to the remaining obligee. The dealing between Mary J. Bewley and the respondents was virtually a sale by them to her of their several undivided rights in and to the money to be received from John H. Bewley on the said judgment, and was a mere substitution of Mrs. Mary J. Bewley, assignee, as plaintiff, instead of Roberts and Palmatary, assignors, and former obligees. Whatever may be said of the origin of assignments, and whether choses in action were assignable at common law or not, they were assignable under the statutes of this state at the time these assignments were made, while "there never was a doubt that any interest whatever in personal property, or a mere possibility coupled with an interest in real estate was assignable in equity. *Lawrence v. Bayard,* 7 Paige, 76; *Whitfield v. Fausset,* 1 Ves. Sr., 391; *Wright v. Wright,* Id., 411. It was no part of Hutchison's share that Mrs. Bewley bought or

paid for.  It was not for the three obligees that two of them sold parts belonging to all, and that the assignee paid for to be divided between the three plaintiffs in the judgment.  It was not a certain specified sum of said judgment belonging to the three obligees in the bond ; but it was the interests of Roberts and Palmatary, and of them only, estimated to be worth the sums named, that she paid for, and that were assigned to her.  How, then, can Hutchison claim any part of the proceeds of such sale ?  Where does the doctrine of trusteeship apply ?  It is contended that any one or more of them could receive all or part, compromise the joint claim, release the debtor, and their co-obligees would be bound by it.  But the two did not receive all or part from the obligor.  They did not compromise the joint claim, or release the debtor, or perform any act whatever by which the obligor is released in any way from the same obligation to Hutchinson, and the assignee of Roberts and Palmatary, as he was under to the original obligees.  They sold to Mrs. Bewley only their interests in the judgment, and were therefore the only parties entitled to receive the consideration price for said sale.  They did not assign or sell any part, share, or interest of or in said judgment which belonged to Hutchison, and thereby raise a trust to pay over part of the proceeds to him.  They did not sell such share of the entire judgment, that the other co-obligee might claim a part of the proceeds, and did not constitute themselves trustees to pay over to him any share of the amounts they received for a part belonging to the three ; but only sold their own shares or interests, which belonged to them, and to them only, and were only paid for such shares the money to which they, and they only, were entitled.  Undivided and indivisible though such interests might have been for purposes of partial payment by the obligor to one of the obligees, according to the argument of the solicitor for the appellant, yet it cannot be denied that they had such interests as were assignable.  Having assigned only their own beneficial interests in said judgment, there can properly be no one but themselves entitled to the consideration price therefor.  Mrs. Bew-

ley has been substituted, and the judgment now stands either in favor of Hutchison and Mrs. Bewley, assignee of Roberts, and assignee of Palmatary or Hutchison, Roberts for the use of Mrs. Bewley, and Palmatary, for the use of Mrs. Bewley, accordingly as the assignments conform to the letter of the statute in that behalf or not. It is not, therefore, such a case as demands contribution between co-sureties, and is not such a case that a court of equity should compel the assignors of their interests in the judgment to Mrs. Bewley to share the proceeds of the sale of their interests only, with the other obligee who made no assignment. Let the decree of the chancellor be affirmed.

HOUSTON, J., concurs.

COMEGYS, C. J., (*dissenting.*) By the record it appears that John H. Bewley, being in a state of utter insolvency, on the 12th day of October, 1878, made and delivered his judgment bond to Samuel Hutchison, Jr., the appellant, and Samuel Roberts and Daniel Palmatary, the appellees, in the penal sum of $3,900, with condition for the payment to them, their executors, administrators, and assigns, of the real debt of $1,950, with interest thereon, on or before the 1st day of May, 1879. In the body of the condition is this expression : " Note. This bond is given as further security as my indorser on certain judgment bonds, and for the mutual benefit of each party named in the within obligation, according to liability for me as surety." By both bill and answer it appears that at the date of the said bond the appellant was surety for the obligor in a judgment bond to Tilghman Foxwell for the real debt of $1,000 ; that the appellee Samuel Roberts was surety in a judgment bond to Charles Numbers for the real debt of $529.45 ; and that the appellee Daniel Palmatary was his surety in judgment bond to William Sharp for the real debt of $742 ; and it is admitted on both sides that the aforesaid bond by the obligor to the said obligees

was made for the purpose of indemnity against said bonds, and for the mutual benefit of the obligees, respectively, according to their several and respective liabilities under them. But for the fact of the expression aforesaid in the condition of the bond to the obligees it would be very difficult to ascertain why it should have been given at all. That writing makes it plain that the object aimed at by the obligor was to make a liability to the sureties that should place them upon a perfect equality with respect to any payment under said bond. The sureties were equally meritorious, and the principal intended to be equitable towards them by establishing equality, which is equity. The true interpretation of the interpolated note is, as treated by both parties before the court, that the proceeds of the bonds should be shared equally by the obligees, according to a *pro rata* consideration of the respective liabilities they were respectively under by virtue of their respective aforesaid suretyships for the obligor. The sale of the obligor's property, real and personal, not long after the execution of the said bond—which was entered in the Superior Court of Kent county, where all the property of the defendant was, on the 14th day of October of the same year of 1878—developed the fact that the proceeds were inadequate to the payment of liens prior to that of the judgment entered on said indemnity bond. Said judgment was therefore of no value, the obligor's insolvency being hopeless. One of the parcels of John H. Bewley's real estate was a farm in Duck Creek Hundred. At the sale by the sheriff it was bid off by parties who declined to comply with the terms of sale. It therefore remained unsold. After the return of the sheriff to the October term, 1878, of the Superior Court, of the sale made by him under his process, (the parcel aforesaid remaining unsold,) another writ was issued, returnable to the April term, 1879, of said court, for the sale of the unsold parcel; and at the sale thereof it was bid off by Mary J. Bewley, the wife of John H. Bewley, and the writ was returned, and confirmation of the sale made accordingly. It appears by proof in the case,

that she bought in the parcel for the sum of $8,000, and the property was afterwards, in 1881, sold by her and her husband for the sum of $16,000 to William Bradley, by which there was realized as profit on the purchase the sum of $6,800. Those facts appear by the testimony, or are matters of record. By the testimony, upon cross-examination, of John H. Bewley, who was examined by the appellees in the suit below, it appears that he had a conversation with his wife shortly after the receipt of the aforesaid sum of $6,800 from Bradley,—he says, at least a month prior to the 12th of December, 1880,—which was as follows : "Shortly after my wife had received the six thousand eight hundred dollars from William Bradley, she and I had a conversation relative to the said assignments, in which I told her that Samuel Roberts, Daniel Palmatary, and Samuel Hutchison were sureties for me on certain paper, and that I had given them together a collateral bond (thinking it would save them) on my lands. I further told her that the collateral bond which I had given to them, and which had been entered against my property, was not reached out of the proceeds of my property, and that as Mr. Roberts and Mr. Palmatary were under no obligation to me in any business transaction, but had gone security for me purely out of friendship, I did not want them to lose anything by me, and I would like her to take a part of the money that she had received from Mr. Bradley and pay Mr. Roberts and Mr. Palmatary, and releive them from any loss by me; and I said to her that if she would do this Mr. Roberts and Mr. Palmtary would transfer to her all the interest they had in the debts against me, and that it would place her in their position, and relieve them from any loss by me ; which she agreed should be done, and authorized me as her agent to attend to the matter. I further said to my wife that in regard to Samuel Hutchison I had transferred to him a judgment on the docket at Dover which I had against his brother, John, which amounted at the time, with interest, to between eight and nine hundred dollars, and, according to my calculation, left me indebted to him about $225 which matter I could attend to myself."

With the foregoing facts before us, and the testimony in the case, we are able to fully understand this controversy. The appellant contends that the payments to his co-obligees in the indemnity bond should be held to be for the mutual benefit of all the obligees, to be divided between them *pro rata* according to their respective liabilities as sureties as aforesaid of John H. Bewley, tendering himself ready to throw the amount received by him in money or by assignment from said Bradley in which the payments to them respectively, thus making the fund to be distributed to be the aggregate of what he and they received on account of their aforesaid suretyship. But his co-obligees resist this proposal, or mode of adjustment of interests, contending that no payment as such was made to them at all as such sureties, but that there was a sale by them of their interests, respectively. under said indemnity bond, and a purchase thereof by Mary J. Bewley. The indisputable facts of this case preclude, in my opinion, any other conclusion than that payment was the character of the transaction, although the futile form was pursued of taking an assignment of the aforesaid shares of the appellees. The fact of John H. Bewley's utter insolvency at the time of the transaction, and the corresponding fact of the entire worthlessness, therefore, of the interests attempted to be transferred, are evidence, to my mind, sufficient to make such transaction payment for the supposed separate interests of the appellees. And I am strengthened in this belief by the additional fact that, so far as appears, no effort has ever been made by John H. Bewley to pay to the appellant the sum admitted by the former to have been due to him at the time of the transaction with his co-sureties. Mr. Bewley states, in his testimony before quoted, what he told his wife he would do; but it does not appear that he ever made any effort to do it. All, therefore, which was not received by the appellee from him, by the assignment of the judgment of Bewley against John H. Hutchison, or by actual money, is yet due and unpaid. Again, supposing a purchase merely of the alleged separate interests of the appellees intended, what did Mrs. Bewley acquire? If she had not

been John H. Bewley's wife, nor under disability, she would have acquired the same right precisely, and nothing more, that each of the appellees had,—the right to share *pro rata* with his companions in any sum that should be realized under the judgment. But for the clause in the body of the condition of the bond given by Bewley to his sureties, the obligees would have been absolutely equal owners of the bond, and any sum received on account of it by one or more of them would have inured for the equal benefit of all the rest. If by that clause it had been provided in terms even that a certain part of the real debt should be for the use of one, another part for another, and the balance for the third, still the obligees would have been joint owners of the bond, and not owners of separate parts of the real debt; for, if owners respectively of separate parts, the bond would still belong to all, and proceedings for collection would have to be in the name of all. There cannot be joint and several obligees in a bond, as there may be of obligors. 7 Bac. Abr. tit. "Bond," D, 3. A bond to two or more persons is a joint bond; and, were it not so, an obligor might be harassed by a multitude of suits. When money is to be collected upon it, proceedings must be in the name of all the obligees; and, if one of them gets possession of such money, he has no right to apply it to his interest in the bond, but must account to his co-obligees for their part of it; in other words, he must divide equally with them, if they have an equal interest, (which they have, *prima facia*,) or *pro rata* if their interests *inter sese* are not of the same amount. But no inequality can be a legal one. The character of the instrument forbids any other idea than that the bond is the ordinary one of equal interests. Such securities are somewhat similar to joint tenancy in real estate. They are subject to survivorship, which could not be if there were any several ownership in them. If a bond could be made to two or more persons, with condition to pay to one a certain portion of the debt secured, and to the other or others certain other portions, making together the whole, no action could be taken, as I have said, upon it, but in the joint names of all, or of

the survivors where an obligee or obligees is dead. There may be, as between the obligees several interests in the debt secured by the condition of the bond, which would prevent the operation of the *jus accrescendi* otherwise applicable to it, but would have no effect to entitle an obligee to proceed on such bond in his own name. His separate interest would not be assignable at law, of course. A court of equity, however, would recognize an assignment of it; but this would put the assignee in the shoes of the assignor with respect only to the interest assigned, and would not confer upon him any right to proceed at law for his own benefit.

This leads to the question : What is the true construction to be given to the terms of the note in the indemnity bond ? The obligees were not, it is true, co-sureties; and therefore there is no equity between them of equality of benefit, or of obligation to contribute in the event of enforced liability in the case of part of them. In that aspect, if Bewley had, instead of the joint bond to the three, paid into the hands of one of them, for example, money to enable him to discharge his liability as surety for him, neither of the others would have had any right to call upon such surety for any part of it to relieve himself, which he would have had the right to do if they had been co-sureties; but by the giving by Bewley of the joint bond and the acceptance of it by the sureties, they became, in the view I take of the case, each of them entitled to recive his *pro rata* share of any money received by either on account of it. It is, I think, very certain that such was the idea when the bond was made and delivered, the note importing (though by somewhat confused language) that the obligees were to mutually share any avails of the bond *pro rata* according to their several liabilities for the obligor as such as aforesaid. Now, it is not contended by the learned counsel of the appellees that a payment made by Bewley, or raised out of any property he might have had, would have been for equal benefit of all *pro rata*; but the contrary was conceded. We are, then, brought to the question whether the transaction with Mrs. Bewley, or in her name, rather,

(for her husband acted for her,) is to be regarded otherwise than as a payment on his behalf, although the mode of doing the business has the form of an assignment. What interest had Mrs. Bewley on the judgment on the indemnity bond after the assignment? If the question were to be considered without reference to our statutory legislation for the benefit of married women, clearly, none. Marriage, at common law, vests an absolute gift in the husband of all the good and chattels of his wife, and qualifiedly of all her choses in action, which latter only required to be reduced into possession to be his absolutely also. As the money of a wife is that of her husband, it follows that whatever she buys with it is to be taken as a purchase with his money, by his consent, and is his. In other words, she is considered as acting for him as his agent in the transaction of purchase. There are a few circumstances which constitute exceptions to this rule, but it is not essential to consider them in this inquiry. Leaving them out, the rule of the common law is uniform, as I have stated. In equity a woman may have a separate property in real or personal estate, acquired by purchase, (actual or technical,) for there can be no such estate by descent. If she have money of her own, but not her separate property in equitable consideration, and by personalty with it, the movable things become his absolutely, without any act of his; and choses in action become his, so that he may release them or reduce them into possession. If the money were her separate property, there is no qualified gift of such choses, and a court of equity will restrain him, upon her application, from his attempt to make them his. It does not appear by the evidence in the case that at the time of the purchase by Mrs. Bewley of her husband's farm at sheriff's sale she had any property or means at all. A fact so important would, no doubt, have been shown if it existed. The purchase, therefore, was a speculation purely; and a goood one it turned out to be. Until the farm was paid for and conveyed to her by the sheriff, for anything that appears, she had no means whatever. She made payment by negotiating a mortgage loan with the Kent County Mutual In-

surance Company. There was therefore no property belonging to her at the time she bid off the land, either legal or equitable. What she acquired by the purchase at sheriff's sale could not have been anything but legal property, for there was no trust, express, or implied, affecting it, and no necessity for any under the law passed by the legislature in 1873, (Rev. Code, p. 479.) The jurisdiction of a court of equity to decree a trust for the benefit of a married woman, where none is actually created, is to carry into effect a disposition of property by a grantor for her separate use so as to prevent her husband from interfering with it, and also to protect it, if personalty, from the rule of law that makes it his exclusively. There being no necessity, as before said, for equity interference in case of property acquired by married women since the act of 1873, such jurisdiction would, of course, not be exercised, according to the well-known rule that equity will not interfere where the law gives adequate relief. It is very difficult to conceive of any case of a married woman's property since the passage of that statute where an equity court could be called upon to protect it.

But, as I have before said, the ownership of a married woman, since the act, is legal, and not equitable. She is, with respect to it, independent of her husband. The statutory provisions are explicit upon that point. Her husband cannot dispose of it, nor is it liable for his debts. She may deal with it as she pleases, except that he shall have his curtesy in the real estate, and the personalty shall be his as her administrator, if she have not disposed of it at her death by will. But suppose she should, as in this case, purchase with her money a debt against her husband, could this be kept afoot by an assignment of it to her? That is a question necessary to be passed upon in view of a consequence to be developed in case a negative answer is proper. Now, it is an elementary principle that a wife cannot be her husband's creditor at the common law. They are one by it, and her money is his money absolutely, and her choses are as absolutely his, if he reduce them into possession in his life-time. The act of marriage operates a

gift to him of her personal property, subject to his diligence in the case of choses in action. Were it not for the act of April, 1873, there could be no pretense that the purchase of the rights of Palmatary and Roberts in the indemnity bond would not be an extinction of those interests. They could not be held by Mrs. Bewley as against her husband any more than a bond of his given to her *dum sola* could be held against him after the marriage, unless such bond was separate property,—that is, the fruit of separate limitation or gift. By the law before the statute that would not keep it alive; but, as the court of chancery has power in the case of separate estates to decree a trust, the husband, would be held to be a trustee of the wife of the money secured by the bond, but the bond itself would be discharged at law. It would be the fact of separate property in the wife that would evoke the aid of equity to prevent the operation of payment by the purchase. If the money which made the purchase was not separate property in equity, that jurisdiction could not be successfully appealed to by the wife for protection against the rule of the common law. The question then arises whether the assignments in this case are secured by the statute against the common-law rule? The wife, by the law in question, is a *quasi feme sole* as to holding and dealing with any property she has, whether acquired before marriage or since received "by gift, grant, devise, or bequest, from any person other than her husband." In the language of the statute, it is "her sole and separate property." As she is thus, as it were, emancipated from her husband, and made capable of holding and disposing of real and personal property independent of him, she must be treated (in a proper view to take of the matter) as entirely fitted in the contemplation of the law to take care of herself and her property, the same as single women are. It follows from this that, while the husband may not interfere in any way with his wife's property without her consent, as no stranger may with another's property without that person's consent, yet there is no prohibition against her giving her property to him if, uninfluenced improperly, she choose so to do. In this case

Mr. Bewley desired to make his bond of indemnity valuable to two of his sureties, Palmatary and Roberts. It had no value at its execution, and the act of making it was futile as to any responsibility of himself pecuniarily. He therefore applied to his wife to advance the necessary money to enable these sureties to discharge their liability upon the bonds where they were severally responsible for him. She consented, and the transaction was done as before stated, and the assignment was made. What effect had this? These assignments are legal instruments, and not equitable, for they are made under the statute about assignments, and protect themselves without any aid from equity. They became Mrs. Bewley's separate property at law. But they were and are entirely worthless as investments, and are not likely to be otherwise. Can the advancement of the money, therefore, to her husband to enable him to furnish money to those sureties to enable them to pay off the respective bonds to which they were sureties be looked upon otherwise than as a mere gift in fact to him? There can be no question of her right to make it, if that is the effect of the transaction, as it was her voluntary act to enable her husband to relieve two of his sureties from their embarrassment as mere volunteers, on his account. I do not doubt the right of a married woman, having property of her own, to purchase a lien against her husband's property, and hold it as such. In that respect she stands exactly where she did in equity before the statute, the object of which seems to have been to give her a legal *status* with respect to her own property, such as she had before in equity. But as there was no pretense in equity that a wife could acquire and enforce her husband's personal debt, (bond, note, or other personal security,) which would be extinguished at law upon her acquisition, that court could only hold him as trustee for her as to the money secured by the instrument.

Now, at law, a wife may have a separate property in goods, chattels, and choses in action, and the husband cannot interfere with them; but does this extend to enabling a wife to buy in her husband's liabilities, and hold them against him as any other person

32

can? I think not. When, in her new capacity, she undertakes to do an act, she must be held, like any one *sui juris*, (for she is such by the law,) to contemplate the effect of her act, and to know that, while her husband may not control the disposition of her property by her, she may give it to him, if she see proper, and this no matter what the form of a transaction may be, unless it can be supposed (which cannot be in this case) that it was adopted in contemplation of some value resulting from the transaction itself. While there can be no objection to a wife holding a lien against her husband's property, if he have any at any time, but as courts of equity with their broad and beneficent jurisdiction in the cases of married women have not undertaken to keep alive a mere personal security against the husband, but hold him a trustee for the money secured by him, it is not reasonable to conclude that the act of 1873 was intended to go further, and give the wife control, as his mere creditor, of his personal liberty, as she would have to some extent by process of *capias* under our law, if she complied with its provisions. I think it much more reasonable to construe this statute as not changing the common law so far as the personal liabilities of the husband are concerned,—that is, upon notes, bonds, and other personal security,—but to treat a purchase of such as an intended gift to him. I cannot think that the legislature ought to be held as intending to place the husband in the hands of his wife by the purchase by her of any of his liabilities, but to limit her power, as in equity, to acquisition of securities by him, (mortgages, judgments, etc.) Here, if the judgment on the indemnity bond could be considered as of any value at the time of the assignment, or likely ever to become such, it might well be that the object of the purchase was investment; but, as it was not, and the professed object was the relief of certain sureties, I think the transaction ought to be treated as a gift of money by Mrs. Bewley to her husband for that purpose. How the money was paid to them, out of what fund, and by whom, I think may be disregarded entirely, as may also the fact of the as-

signment. To my mind the testimony of Bewley himself is in support of this view,—that the technical purchase of the interests of Palmatary and Roberts was nothing more nor less than an advance of money made by his wife to enable him to put those of his sureties in a situation enabling them to pay off the bonds on which they were bound for him. His proposition to her evidently, in my mind, was to consent to the application of enough of the fruits of her speculation to relieve those sureties; he undertaking to satisfy the other (the appellant) of the amount still necessary to relieve him. But for the fact of assignment by Palmatary and Roberts there would be no sign of purchase whatever. As there was nothing of the least value to assign well known to all parties, I cannot but view these instruments, or indorsements of record, as mere forms adopted to obscure the real transaction. Having come to this conclusion, I am of opinion that the several amounts, or their equivalents, received by the obligees in the indemnity, together with interest on them respectively from the time of their respective receipt, should be added together, and the sum of the whole be divided among those parties *pro rata* according to their several liabilities in the surety bonds respectively; and that the excess over the respective shares thereof of the said Palmatary and Roberts shall be paid by them, respectively, to the appellant, to equalize him with them; and that the costs be divided equally between the parties, each paying one-third of them.